JUNIOR CHAMBER OF COMMERCE OF ROCHESTER, INC., ROCHESTER, NEW YORK, et al., Plaintiffs-Appellants,

v.

The UNITED STATES JAYCEES, TULSA, OKLAHOMA, et al., Defendants. Appellees.

No. 73-1560.

United States Court of Appeals, Tenth Circuit.

April 16, 1974.

Judith R. Cohn, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa. (E. Gerald Riesenbach, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., on the brief), for plaintiffs-appellants Junior Chamber of Commerce of Philadelphia, Pennsylvania, Thomas S. Rittenhouse, Beverly Lynn Benson, Margaret M. Hipple and Roberta M. Schneider.

Emmelyn Logan-Baldwin, Rochester, N. Y., for plaintiffs-appellants Junior Chamber of Commerce of Rochester, Inc., Janis Gaines, Jane Selman, Charles Wetmore, James T. Bruen, David Heiligman, Thomas Banaszewski and Sydnee Schwartz.

Debra A. Millenson, Washington, D. C., for plaintiff-appellant Joann Clevenger.

Josephine L. Citrin, Portland, Maine, for appellant Joan H. Slyne.

James E. Hautzinger and S. Chandler Visher, Dawson, Nagel, Sherman & Howard, Denver, Colo., local counsel to all plaintiffs-appellants.

Robert J. Corber, Washington, D. C. (Gary D. Taylor, Denver, Colo., and Ronald S. Cooper and Kenneth I. Jonson II, Washington, D. C., of counsel, on the brief), for private defendants-appellees.

Ann Belanger, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and Jonathan S. Cohen, Attys., Tax Div., Dept. of Justice, Washington, D. C., and Nathan G. Graham, U. S. Atty., of counsel, on the brief), for federal defendants-appellees.

Before BREITENSTEIN, McWILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is a sex discrimination case. Appellants seek review of a judgment of dismissal of the United States District Court for the Northern District

of Oklahoma. The claim of the appellants in the District Court was that the United States Jaycees unconstitutionally excluded the Junior Chamber of Commerce of Rochester, New York and the individual appellants from affiliation and membership in the United States Jaycees. Similar claims are asserted by the Junior Chamber of Commerce of Philadelphia and of New Orleans, Louisiana, and individual members of those organizations. Appellants also asserted in District Court that certain named federal officers impermissibly support the United States Jaycees and various state and local Jaycee chapters by allowing them tax exemptions and by utilizing them to implement federal grants and programs.

The controversy was the result of the United States Jaycees' bylaws limiting membership to males. On this account the Junior Chamber of Commerce of Rochester was expelled from the United States Jaycees because it had chosen to admit women as members. Individual members of the Rochester Jaycees were then prevented from becoming affiliated with the United States Jaycees and thereby lost certain opportunities to take part in the charitable work of the United States Jaycees, part of which involved the transmission of federal funds to the needy. Appellants allege that the United States Jaycees are violating the Fifth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act, 42 U.S.C. § 1983, by prohibiting women from becoming members of the United States Jaycees and any state or local Jaycees organization.[1]

Various federal statutes, including the Civil Rights Act of 1964 as amended by the Equal Employment Opportunity Act of 1972, are relied on to gain admittance to federal court for the purpose of as-

serting the alleged violation. According to the allegations of the amended complaint, the Jaycees and various state chapters thereof received substantial tax benefits under § 501(c)(3) and (c)(4) of the Internal Revenue Act and also various federal grants and contracts from OEO and other departments of the United States Government. It is alleged that the various Jaycee organizations use federal funds to sponsor HEW programs, including construction of housing projects and assistance to underprivileged children.

From all of this, it is the position of plaintiffs that the United States Jaycees is in practical effect an arm of the government and that therefore when it discriminates in its membership policies it is acting officially. On this basis appellants claim that their rights are subject to the protection of the Fifth and the Fourteenth Amendments to the Constitution of the United States and are violated by the Jaycees' exclusionary membership policies.

The plaintiffs do not contend that they have any direct pecuniary interest in the funds which have been mentioned. An evidentiary hearing held by the District Court revealed that the United States Jaycees administer substantial grants on behalf of the government. A memorandum admitted into evidence showed that government funds distributed by the United States Jaycees amounted to approximately $985,000. However, the rights which the plaintiffs say were invaded were not monetary. Rather, they contend that they were deprived of leadership training and administrative experience.

The District Court ruled that the complaint failed to state a claim because the federal question was insubstantial. The court there noted that the plaintiffs had

---

1. Why the defendant Jaycees would so adamantly oppose members of the feminine sex in its organization is most difficult to understand. It may well be that they fear the competition. They may indeed be concerned as to the known propensity of members of the feminine sex to devote themselves to causes such as this. We are not, however, permitted to pursue this inquiry—our mission being to ascertain whether the action complained of is sufficiently governmental to justify the federal courts' entertaining and taking cognizance of the claims.

failed to allege any direct relationship between the discrimination against the plaintiffs and the distribution of government funds.

In support of their contentions that the discrimination is of constitutional dimension, the plaintiffs cite cases recognizing the invalidity of discrimination both in educational areas and in employment. *See* Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). In *Frontiero* there was a federal statute which differentiated between housing and medical benefits available to married male and female members of the armed forces. The Supreme Court condemned this as unconstitutional, citing Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Four members of the court held that classifications based upon sex were to be considered suspect. This shifted the burden to the government to establish the validity of such classifications and gave rise to the necessity for strict judicial scrutiny. In *Reed* the Supreme Court had ruled that an Idaho statute giving preference to males over females as administrators of estates was an unconstitutional violation of the equal protection clause.

There is no dispute about the invalidity of discrimination by the state or federal government based on sex and there is no dispute about the fact that the plaintiffs were excluded from membership in the organization purely on the basis of sex. Therefore, the only issue is whether the discrimination can by reason of the circumstances present, be considered official (state or federal) action. It must also be conceded that private discrimination does not give rise to a constitutional violation. *See* Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972).

The Supreme Court has held that entities which are ordinarily private but which perform governmental services cannot discriminate in carrying out their functions. Such agencies are subject to constitutional prohibitions. *See, for example,* Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S. Ct. 856, 6 L.Ed.2d 45 (1961).

I.

We proceed to consider whether the plaintiffs have established a case under the Constitution and laws of the United States including 28 U.S.C. § 1331, which implements the "arising under" clause of Article III of the Constitution and authorizes suits arising under the Constitution and laws of the United States in which the amount in controversy exceeds $10,000.

The District Court did not dismiss the cause for lack of jurisdiction. It correctly entertained the action and then dismissed it because of plaintiffs' failure to show a substantial federal question.

In Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), a suit against agents of the FBI seeking damages for violations of the Fourth and Fifth Amendments, it was alleged that there were unconstitutional arrests, searches and seizures. The district court and the court of appeals dismissed for want of jurisdiction. However, the Supreme Court reversed these holdings, stating· that the court must assume jurisdiction in order to decide whether the allegation stated a cause of .action on which the court could grant relief as well as to determine the issues of fact arising in the controversy. According to the Supreme Court, jurisdiction is not defeated by the possibility that the complaint does not state a claim for relief. This is a question of law which must be decided by the court after the parties have advanced beyond the threshold of the court. The Supreme Court concluded in Bell v. Hood that a federal court has jurisdiction to entertain an action under 28 U.S.C. § 1331 if the complaint asserts a reasonable claim seeking recovery directly under the Constitution or laws of the United States. Under the two exceptions to this rule, a suit may be dismissed for lack of jurisdiction only where the alleged claim under the Con-

stitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous. 327 U.S. at 682, 66 S.Ct. 773.

Subsequently, in Bivens v. Six Unknown Named Agents of Fed. Bur. of Narc., 403 U.S. 388, 91 S.Ct. 1999, 29 L. Ed.2d 619 (1971), the Court went much further in delineating the scope of federal court jurisdiction arising under the Constitution and laws of the United States.

The *Bivens* Court proceeded to carve out a damage remedy in federal civil rights actions based on violation of the Fourth Amendment. This approach is in accord with Gully v. First Nat. Bank in Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936) and Smith v. Kansas City Title & Trust Co., 255 U.S. 180 at 199–200, 41 S.Ct. 243, 65 L.Ed. 577 (1921).

The Wright edition of Barron and Holtzoff, Vol. 1 at pp. 122–23, points out that whether there is a claim presenting a federal question and whether that claim is well founded when considered on its merits are two separate and distinct questions. The author goes on to say:

> However, the [federal] question must be substantial and not frivolous or a mere matter of form. A claim is not substantial if it is obviously without merit, or foreclosed by prior authoritative decisions. A proposition settled by the Supreme Court no longer presents a federal question for jurisdictional purposes. At the same time, a claim properly based on federal law raises a federal question even though all parties may agree as to the legal principles involved and disagree only as to the facts of the particular case.

It is difficult to apply jurisdictional principles to the instant case, which is somewhat of a borderline situation in which the facts are of minimal assistance. In the final analysis the plaintiffs demand an enormous amount, that is, injunctive relief against high officials of the United States, which relief would interfere with the administration of the tax laws affecting the allowance of tax exemptions. Plaintiffs make these extreme demands even though the tax benefits extended are not directly related to the discrimination complained of. Thus it comes close to a situation in which there is at least some temptation to ground the decision on lack of jurisdiction. Since, however, it is more a matter of form and procedure to dismiss the cause out of hand, we choose to accept jurisdiction and then to consider whether plaintiffs present a meritorious claim under the Constitution and laws of the United States.

The dichotomy between the jurisdictional question and the question of considering the claim on the merits is far from clear in the instant case. However, in view of the fact that the plaintiffs offered evidence to show that the various statutes were applied in an unconstitutional way, it appears to us that the cause is not one in which there is a palpable deficiency in the area of jurisdiction. Accordingly, we determine whether there is a sufficient federal claim upon which relief can be granted.

II.

The first question is whether there is a violation of 42 U.S.C. § 1983 which gives a remedy to persons whose civil rights have been invaded by officers acting under color of state law. Although plaintiffs have invoked this provision, they have not emphasized the official state action approach. Rather, the thrust of their argument is that there has been a violation of their constitutional rights because of the close relationship of the Jaycees with the *United States Government*. Indeed, they have not set forth either in their amended complaint or in their briefs a clear-cut theory in support of their alleged § 1983 claim. From a search of the record it would appear that the § 1983 claim is predicated on the fact that in some instances, and particularly in connection

with the Rochester Jaycees, federal funds have been awarded by the United States to state agencies, which in turn have made grants to the local Jaycees chapter for use in activities sponsored by the Jaycees, such as drug abuse and minority betterment programs.

■ We fail to see that there is present the essential state action. It is one thing to say that the private organization has state character where it induces, encourages or promotes private persons to accomplish what it is constitutionally forbidden to accomplish. Norwood v. Harrison, 413 U.S. 455, 93 S.Ct. 2804, 37 L.Ed.2d 723 (1973). We do not have such encouragement or promotion here. The Constitution applies if the private action complained of is in essence the action of the government. Burton v. Wilmington Parking Authority, *supra*. The plaintiffs would have us rule that because the Jaycees are *used* by the state government to dispense funds on its behalf that all their conduct automatically becomes state action subject to a § 1983 suit regardless of whether there exists discrimination by the private entity in the dispensing of the funds. In effect, then, plaintiffs say that the state must, consistent with the Constitution, refrain from dealing with discriminators regardless of whether the discrimination is related to the alleged state action. We disagree.

Our court has adopted a more restricted view of what is state action on at least two occasions. In Ward v. St. Anthony's Hospital, 476 F.2d 671 (10th Cir. 1973), we ruled that a hospital which had received some governmental funding as a small percentage (5%) of its total construction funds was not subject to civil rights actions against its hospital board even though the operation of the hospital was extensively regulated by the state. It was stressed that the acts complained of did not thereby serve to clothe the hospital with sufficient state authority so as to constitute state action. The opinion by Judge Hill also emphasized that the facts failed to establish that the State of Colorado had any part in the alleged deprivation. It was said that the regulation by the state existed only in order to assure quality medical services. Thus, none of the evidentiary matters there presented deprived the hospital of its private status or involved the state in the alleged violations of the Federal Constitution. *Cf.* the Civil Rights Cases, 109 U.S. 3, 3 S. Ct. 18, 27 L.Ed. 835 (1883).

Browns v. Mitchell, 409 F.2d 593 (10th Cir. 1969) also held that unrelated and collateral discriminatory policies of private organizations do not furnish the state action necessary to a civil rights suit. The plaintiffs in *Browns* sought to establish that the University of Denver, a private institution, had state character and was subject to the Constitution and laws of the United States because of a substantial state tax exemption which extended to property operated for profit. In rejecting this, the lack of connection between the tax exemption and the conduct complained of was emphasized.

The membership policy against which the attack has been leveled has no connection with the state activity of the United States Jaycees. Neither the complaint nor the record establishes or promises to establish the kind of state involvement essential to a civil rights action under § 1983.

### III.

There are very few cases involving federal action as distinguished from state action, but similar distinctions between acts of the government subject to constitutional limitations and private actions to which the Constitution does not apply obtain. Thus, the state action cases in which the Supreme Court has enunciated the applicable legal criteria must be considered, and generally the rule which has been adopted as to the state action (that the state itself must have some connection with the discrimination) would apply.

In Burton v. Wilmington Parking Authority, *supra,* the Supreme Court condemned discrimination by a restaurant-lessee of a Delaware parking garage or authority, saying that its refusal to serve a black patron constituted state action. Similarly, in Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), a black patron, who was a guest of a member of the Moose Lodge, was refused service at the club's dining room and bar solely because of his race. The lower court found that the lodge's membership and guest practices were discriminatory and constituted state action. It declared the state liquor license invalid as long as the club's practices were continued. The Supreme Court adopted a narrower view, holding first that the plaintiff-appellee lacked standing to challenge the membership practices of the Moose Lodge, although he did have standing to litigate the validity of the refusal of the lodge to serve him. The Supreme Court then held that Pennsylvania's regulation of liquor traffic was not sufficient to implicate Pennsylvania in the discriminatory guest practices which were employed by the Moose Lodge. The Court further determined that there was no evidence in the record that the regulation of the sale of liquor was intended "overtly or covertly to encourage discrimination." We have concluded from this decision that there must be a sufficient *nexus* between the discrimination and the alleged state action in order to render the activity a constitutional violation.

An even more persuasive analogy is found in Walz v. Tax Commission of City of New York, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970). Here a real estate owner sought to enjoin the Tax Commission from granting exemptions to religious organizations for properties used solely for religious worship. The Supreme Court held that the New York state statute exempting from real property tax an association organized exclusively for religious purposes was not unconstitutional in that it did not itself attempt to establish, sponsor or support religion. The Supreme Court said that the religious clause of the First Amendment does not require absolute abstention by the state from extending any aid to religious organizations. The state may therefore determine that entities which foster moral or mental improvement are not to be inhibited in their activities by *ad valorem* taxes or the hazard of loss of their properties for non-payment. By so doing, the Court reasoned, the government is not thereby sponsoring religion. It is a less direct subsidy than a cash support. Therefore, the Supreme Court reasoned, when the government grants an exemption which does not actually involve the state with the activities of the beneficiary, "there is no genuine nexus between tax exemptions and establishment of religion."

In the case at bar the exemption granted to the United States Jaycees would be even less subject to constitutional attack than would an exemption granted to a church, for in the latter case (the *Walz* case) the proscriptions of the First Amendment expressly require the separation of church and state.

■ We do not say that the relationship between the United States and the United States Jaycees is so remote that the actions of the Jaycees could never be attributed to the government. If, for example, the Jaycees administered the government's funds in a discriminatory manner, a remedy for constitutional violation might well obtain. In our case, however, the question is whether the United States is obligated to see to it that the United States Jaycees' conduct shall be exemplary quite apart from its administering of programs and governmental funds. No case has been cited which extends to this length. On the contrary, the criteria announced by the Supreme Court have tended to require that the alleged unconstitutional conduct relate specifically to governmental action.

## IV.

This cause presents other problems which are argued in the briefs and to

which we will briefly allude. Plaintiffs are seeking injunctions against high government officials first to prevent the making of grants for the use of the deprived and needy and, second, to void the tax exempt status of the United States Jaycees for collateral reasons not set forth in the statutes creating the grants or exemptions. These demands create practical as well as legal problems. Thus, the court is reluctant to interfere with the processes of government and, in effect, to write a tax statute which declares that government officials are obligated to withhold benefits to organizations which are general sinners regardless of whether the sins are committed in the disposition of the government's funds.

One legal obstruction is the doctrine of Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); Larson v. Domestic and Foreign Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), and Land v. Dollar, 330 U.S. 731, 67 S. Ct. 1009, 91 L.Ed. 1209 (1947), which say that when government officials are acting in accordance with the dictates and mandates of the law they are not subject to suit, that is, the suit is, in effect, against the government and the doctrine of sovereign immunity comes into play. Such suits also conflict with the prohibition against interfering with the taxing process. *See* the Anti-Injunction Act, 26 U.S.C. § 7421; Enochs v. Williams Packing Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962); State Railroad Tax Cases, 92 U.S. 575 (1875). *See also* 28 U.S.C. § 2201, Declaratory Judgment Act.

The *Larson* Court recognized two exceptions to the sovereign immunity doctrine which it had applied. First, the case in which the officer is acting beyond the law and, secondly, the situation in which he is acting unconstitutionally. The Court said in *Larson* that neither exception applied and that the granting of relief would be tantamount to an unconsented judgment against the government.

The decision of the Supreme Court in Land v. Dollar, *supra,* an action against members of the Maritime Commission to recover shares of stock delivered to the Commission as a pledge to secure a loan to the plaintiff's corporation, followed the basic doctrine later enunciated in *Larson.* In Land v. Dollar, *supra,* the Supreme Court recognized the right of the district court to entertain the suit because potentially at least it involved invalid retention of private property.

Dugan v. Rank, *supra* (1963) sought an injunction against reclamation officers to prevent impounding water behind a dam. Here the Court said that neither of the exceptions noted in *Larson* were present.

In our case there is neither an unconstitutional act on the part of the officers involved nor an action beyond the scope of the authority granted. Accordingly, no basis is shown for departing from the *Larson* doctrine.[2]

Finally, then, plaintiffs make tremendous and disproportionate demands which are beyond the realm in which the court can grant relief.

For the reasons stated, the action of the District Court dismissing the cause was correct and the same is hereby approved. The judgment of the District Court is affirmed.

2. Furthermore, we regard the District Court as having correctly decided that plaintiffs' constitutional challenge to several federal statutes is too insubstantial to require convocation of a three-judge district court under 28 U.S.C. § 2282.