JUNIOR CHAMBER OF COMMERCE
OF KANSAS CITY, MISSOURI,
Plaintiff-Appellee,

v.

The MISSOURI STATE JUNIOR
CHAMBER OF COMMERCE,
Defendant,

and

The United States Jaycees,
Defendant-Appellant.

No. 74–1929.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 6, 1975.

Decided Jan. 8, 1975.

David C. Trowbridge, Kansas City, Mo., for defendant-appellant.

William L. Turner, Kansas City, Mo., for plaintiff-appellee.

Before GIBSON, Chief Judge, and HEANEY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

This is an expedited appeal from an order granting a preliminary injunction. The Junior Chamber of Commerce of Kansas City, Missouri (K. C. Jaycees) brought this action against the United States Jaycees (U. S. Jaycees) to enjoin that national organization from revoking the charter of the K. C. Jaycees and from removing a convention honoring its Ten Outstanding Young Men (TOYM Congress) from Kansas City, Missouri to another site.[1] The district court granted a temporary injunction against removing the TOYM Congress from Kansas City, Missouri and deferred for later proceedings, the issue of charter revocation. We reverse and remand with directions to dissolve the injunction.

The 1975 TOYM Congress was awarded to the K. C. Jaycees chapter in January 1974 and a contract was then entered into between the K. C. Jaycees and the U. S. Jaycees relating thereto. This contract contained a provision that "this agreement is and shall be subject to all the terms and provisions of the U. S. JAYCEES' By-Laws and Policy in effect at the time of its execution insofar as they affect or control the CONGRESS." The bylaws of the U. S. Jaycees limit membership to males and also provide that the bylaws of local and state Jaycee organizations must not be in conflict with the bylaws of the U. S. Jaycees.

In February of 1974 the K. C. Jaycees amended their bylaws to admit women to full and equal membership. This was in direct violation of the bylaws of the U. S. Jaycees and was therefore considered by the U. S. Jaycees to be in violation of the TOYM Congress contract. In August of 1974 the U. S. Jaycees, by resolution of its National Executive Committee, cancelled the contract for holding the TOYM Congress in Kansas City, Missouri. One of the reasons given for the cancellation was the amendment by the K. C. Jaycees of its bylaws granting full membership rights to females.

The K. C. Jaycees brought this action for preliminary and injunctive relief on October 17, 1974 pursuant to 42 U.S.C. §§ 1983, 1985(3), 2971c(b), and the first, fifth and fourteenth amendments. Jurisdiction was alleged under 28 U.S.C. §§ 1331 and 1343. The trial court found that "jurisdiction exists under 28 U.S.C. § 1331 (1970) as 'arising under' the Fifth Amendment, and that the undisputed evidence clearly establishes the requisite jurisdictional amount." The trial court went on to find that "irrational sex discrimination is a violation of the equal protection guaranties of the Constitution" and further determined that the requisite governmental action was present by reason of the federal monetary grants received by the U. S. Jaycees (through its Foundation), which grants were used to fund many of their national programs.[2]

---

1. The Missouri State Junior Chamber of Commerce was also named a party defendant but it is not a party to this appeal.

2. These national programs are as follows:
   1. Operation Threshold, an alcoholic rehabilitation and awareness program.

2. Project Mainstream, relating to aid to the disadvantaged.
3. Environmental program sponsored by H.E.W.
4. A venereal disease awareness program.
5. Criminal Justice program designed to assist inmates and ex-offenders.

On this appeal the U. S. Jaycees claim (1) that the trial court's preliminary injunction violates Rules 52(a) and 65(d) of the Federal Rules of Civil Procedure, (2) that the trial court erred because it was not required to decide the constitutional issue raised and should have disposed of the case on nonconstitutional grounds,[3] and (3) that the district court erred in assuming jurisdiction under 28 U.S.C. § 1331 because the U. S. Jaycees did not abrogate any rights of the K. C. Jaycees under the fifth amendment inasmuch as there was not a sufficiently close nexus between the federal government and the action of the U. S. Jaycees in cancelling the contract. We decline to rule on the first two of these points. However, we determine that the trial court should not have granted the preliminary injunction because the K. C. Jaycees did not show the required close nexus between the federal government and the action of the U. S. Jaycees in cancelling the contract.

■ The Supreme Court has often stated that private action, as distinguished from state action, is immune from the equal protection restrictions of the fourteenth amendment. Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 173, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). The parties concede that this same reasoning requires a finding of "federal action" before there is any deprivation of due process in violation of the fifth amendment. See Junior Chamber of Commerce v. United States Jaycees, 495 F.2d 883, 887 (10th Cir. 1974), cert. denied, 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974); Jackson v. Statler Foundation, 496 F.2d 623, 627 n. 5 (2d Cir. 1974); New York City Jaycees, Inc. v. United States Jaycees, Inc., 377 F.Supp. 481, 487 (S.D.N.Y.1974); McGlotten v. Connally, 338 F.Supp. 448, 455 n. 31 (D.D.C.1972). In either case, it is es-

sential to show that there is "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Jackson v. Metropolitan Edison Co., supra, 419 U.S. 351, 95 S.Ct. 453.

We agree with the conclusion of the Tenth Circuit in Junior Chamber of Commerce v. United States Jaycees, supra, 495 F.2d at 887, where it states as follows:

We fail to see that there is present the essential state action. . . . The Constitution applies [only] if the private action complained of is in essence the action of the government.

■ Although the federal government supplies funds to the U. S. Jaycees for use in implementing the specific projects hereinbefore set forth, there is no close nexus between those programs and the TOYM Congress, the location of which is the subject matter of the injunction. In our opinion the nexus in this case is not as "close" as the nexus in either Jackson v. Metropolitan Edison Co., supra, or Moose Lodge No. 107 v. Irvis, supra.

It may well be that, in administering these federally financed programs, Jaycees in each local chapter are given an opportunity to develop and maintain leadership qualities which will be beneficial to them in business, and that women are now being deprived of the right to thus improve themselves. But, as heretofore stated, that is not the sufficiently "close nexus" required by Jackson v. Metropolitan Edison Co., supra, and Moose Lodge No. 107 v. Irvis, supra, to constitute state (governmental) action and thus fall within the ambit of the due process requirement of the fifth amendment.

■ The mere receipt of government funds is not enough to make the action of the grantee "state action," Wahba v. New York University, 492 F.2d 96 (2d

3. The U. S. Jaycees claim that the TOYM Congress contract was cancelled for contractual reasons not related to the membership bylaw controversy including a failure by the K. C. Jaycees to make timely and adequate preparations for the convention.

Cir. 1974), although a joint participation in the challenged activity may suffice under Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Here the scheduling and holding of the TOYM Congress is clearly not a joint venture or joint participation of the U. S. Jaycees and the federal government nor is the government an indirect partner in that undertaking as rationalized by the dissent. We do not think the heavy, suffocating hand of the federal government should fall upon every aspect of the private sector. Furthermore, here there are not even any federal funds allocated to, designed, or spent for the TOYM Congress.

We do not decide in this opinion whether or not the U. S. Jaycees have breached their contract with the K. C. Jaycees concerning the TOYM Congress or whether the U. S. Jaycees may revoke the charter of the K. C. Jaycees. We limit our holding to the determination that a preliminary injunction should not have been granted against the U. S. Jaycees prohibiting them from removing the TOYM Congress from Kansas City.

The order of the district court granting the preliminary injunction is reversed and the injunction is hereby dissolved. Mandate shall issue forthwith.

HEANEY, Circuit Judge (dissenting).

I respectfully dissent. The record that we have before us on this appeal from an order granting a preliminary injunction is incomplete. It does show, however:

1. That the primary purpose of the Jaycees is to develop young men as leaders through community involvement;[1]

2. That forty-five percent of all monies received by the U. S. Jaycees comes from the federal government;

3. That the federal funds are used by the Jaycees in community projects throughout the United States;

4. That much of the leadership training received by the Jaycees comes through participation in these governmentally financed projects;

5. That women are excluded from membership in the Jaycees and thus deprived of the opportunity to share in the leadership development opportunities made possible by the federal funds and that no justification for this policy has been demonstrated;

6. That the K. C. Jaycees amended their by-laws to admit women to membership in conflict with the by-laws of the U. S. Jaycees; and

7. That in response to the amendment of the local by-laws, the U. S. Jaycees cancelled the TOYM Congress scheduled to be held in Kansas City and threatened to revoke the charter of the K. C. Jaycees.

In the light of these facts, it is difficult to see how we can, at this stage of the matter, decide that Judge Collinson abused his discretion in enjoining the removal of the convention. It is clear that the K. C. Jaycees will suffer irreparable injury by the removal. Moreover, it is probable that Judge Collinson's finding of unlawful sex discrimination will be upheld when the matter is fully tried on the merits. *See* Minnesota Bearing Company v. White Motor Company, 470 F.2d 1323 (8th Cir. 1973).

Judge Collinson's preliminary findings that the federal government and the U.

---

1. U. S. Jaycees Policy 1–1, entitled "Definition," states:

A Jaycee organization is a constructive action organization of young men who devote a portion of their time to community service in the public interest, developing young men as leaders of their community. U. S. Jaycees By-Law 2–1, entitled "Purpose and Creed," states:

A. This Corporation shall be a non-profit Corporation, organized for such educational and charitable purposes as will promote and foster the growth and develop-

ment of young men's civic organizations in the United States, designed to inclucate in the individual membership of such organization a spirit of genuine Americanism and civic interest, and as a supplementary educational institution to provide them with opportunity for personal development and achievement and an avenue for intelligent participation by young men in the affairs of their community, state and nation, and to develop true friendship and understanding among young men of all nations.

S. Jaycees are partners or joint venturers in many of the leadership programs of the U. S. Jaycees is supported by this record. The substantial financing by the federal government contributes directly to the prestige of the U. S. Jaycees and to the prestige of its local chapters and its members. The government financing assists the Jaycees in achieving its stated purpose of developing leadership in young men through community involvement.

The by-laws of the U. S. Jaycees make it clear that they are not merely an organization designed to engage in good works. They are rather an organization primarily designed to train future leaders for civic and business responsibilities. It appears from this record that the government subsidizes the Jaycees in accomplishing its primary goal. If this proves to be the case when all the evidence is in, the subsidization must end unless the Jaycees are willing to open their membership to all young men and women who desire to participate in their program on a nondiscriminatory basis. Subsidizing training programs foreclosed to women is a significantly greater involvement by government than was present in Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). The governmental involvement here is more like that in Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), for here, as in *Burton*, government funds support the discriminatory conduct of the U. S. Jaycees.

The fact that no federal monies are spent directly on the TOYM Congress does not obscure the fact that federal monies support the discriminatory training programs of the U. S. Jaycees and that it seeks to perpetuate the exclusion of women from those programs by means of the sanction imposed here. In my view, this satisfies the nexus requirement of Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477. The sanction of relocating the Congress is directly related to the continued effectiveness of the discriminatory by-law and the continued disadvantage placed upon women who desire to develop their leadership abilities and thereby enhance their possible success in the world of government or business.

The federal support of the U. S. Jaycees that enables them to attain their stated purpose of leadership development of young men goes to the core of the membership policy here attacked. A distinction between the membership policy's effect on the management of the community programs and the holding of the TOYM Congress cannot realistically be made. The removal of the TOYM Congress is in direct response to the admittance of women to the K. C. Jaycees and will hinder their ability to develop leadership potential by association with the Jaycees program.

The development of community leaders is essential to our democracy and should be encouraged by all responsible persons. But when the federal government becomes involved to the degree present here, the leadership development opportunities it supports must be available to women as well as men.