**Epright v. Parkside Borough Fire Co.**

*Jack Brian*, for plaintiffs.
*Thomas L. Kelly*, for defendant fire company.
*David E. Auerbach*, for defendant borough.

DIGGINS, *J.*, May 8, 1978—

### FINDINGS OF FACT

1. Plaintiffs, Beverly Epright and Maryann Golasa, are individuals of the female sex.

2. The Parkside Borough Fire Company (company) is an incorporated association organized and existing under the laws of the Commonwealth of Pennsylvania and located at 107 West Roland Road, Parkside, Delaware County, Pa.

3. The purpose of the company is to afford emergency medical service and protection against personal injury and property damage resulting from fire or other catastrophe to persons in and about Parkside Borough.

4. The company owns and operates fire fighting equipment and emergency medical apparatus manned by volunteer members of the company.

5. The members of the company are volunteers and receive no compensation for the performance of their assigned duties on behalf of the company.

6. Prior to November, 1975, any person was eligible for membership in the company who was a male citizen of the United States, at least 16 years of age, and who was a resident of or conducted a business in the borough. (Exhibit D-1)

7. On or about November 4, 1975, article III of the constitution was amended, eliminating the restriction of membership to males.

8. Prior to October, 1974, the by-laws of the constitution were amended to create a classification of membership designated "apprentice" (Law No. 1, section 2d) under which any person at least 16 years of age, whether or not a resident of the borough, is eligible (Law No. 1, section 8) and is reclassified as an active member upon completion of two years' service and successful completion of certain training courses in first aid and fire fighting.

9. An apprentice member is ineligible to hold an elective office in the company but is permitted to participate and vote in all company business.

10. An applicant for membership is required to submit a written form of application. The applicant is then proposed for membership at a regular meeting of the company by a sponsor-member. The applicant is then investigated by a membership committee which makes a report to the general membership recommending the applicant be accepted or rejected. If the recommendation is favorable, the applicant is voted upon by the membership. Voting is conducted by means of a "white ball-black ball" system. The voting member selects a white or black ball from one section of a container and casts his vote by putting his selection in another section of the container. A white ball stands for an affirmative vote and a black ball for a negative vote. If five black balls are cast, the applicant is rejected. No reason is required to be given for casting a black ball.

11. Plaintiffs submitted written applications for membership on or about October, 1974, on forms provided by the company but no action was taken on these applications.

12. On January 6, 1976, plaintiffs submitted a second application for membership on forms identical to the first application.

13. Plaintiffs were proposed for apprentice membership by Stephen Epright at a regular meeting of the company on January 6, 1976.

14. Plaintiffs' applications were turned over to the membership committee and thereafter plaintiffs were interviewed by a Mr. William Boyer, chairman.

15. Plaintiffs informed said chairman of their professional training and education in nursing, first aid procedures and emergency medical techniques.

16. On January 20, 1976, plaintiffs' applications were rejected by vote of the membership in which at least five black balls were cast with respect to each plaintiff.

17. During the years 1974, 1975, 1976 and 1977, the annual revenue of the company was in excess of $50,000, which consisted, in part, of an annual contribution from Parkside Borough in the sum of $1,000.

## DISCUSSION

The issue in this case is alleged discrimination on account of sex. A review of the record will demonstrate that the Parkside Borough Fire Company is incorporated and its purpose is to afford emergency medical service and protection against personal injury and property damage resulting from fire or other catastrophe to persons in and about the borough and, in the discharge of these purposes, it owns and operates fire fighting equipment and emergency medical apparatus manned by volunteer members of the company.

It is significant to note that prior to November, 1975, it was limited to male citizens of the United States at least 16 years of age who were residents of or conducted a business in the borough and thereafter, on or about November 4, 1975, this fire company, realizing that the sex discrimination as provided in its eligibility rules was unconstitutional, amended article III of its constitution eliminating the restriction of membership to males. Earlier the by-laws of the constitution had been amended to provide for "apprentice" membership to ripen into active membership upon completion of two years' service and of certain training courses in

fire fighting and first aid. However, the procedure for voting on prospective members was not changed and it is apparent to this court that so long as that method pertains, implementation of the 1975 amendment permitting female membership is for all practical purposes impossible and until the selective method is changed, this organization can, and this record discloses, does discriminate against members of the female sex.

The two women involved here were both highly qualified for membership and one eminently so, yet sufficient black balls were cast to bar them, since so far as this record discloses, there could have been no other reason. It follows that the six black balls were cast solely to bar women from membership. If this fire company is an arm of the borough, such discrimination is done in the realm of official governmental action and is illegal: Junior Chamber of Commerce of Rochester, Inc., Rochester, New York v. The United States Jaycees, Tulsa, Oklahoma, 495 F. 2d 883 (10th Cir. 1974). It is uncontradicted that the borough gives an annual donation of $1,000 to defendant, providing approximately two percent of the revenue received by the fire company from various fund raising activities.

## CONCLUSIONS OF LAW

The law has its basis in the Pennsylvania Human Relations Act of October 27, 1955, P.L. 744, as amended, 43 P.S. §951 et seq. This act, which was first enacted in 1955, expresses the policy of the state in the following excerpt:

§952(a) "The practice or policy of discrimination against individuals or groups by reason of their

race, color, religious creed, ancestry, handicap or disability, use of guide dogs because of blindness of the user, age, sex, or national origin is a matter of concern of the Commonwealth. Such discrimination foments domestic strife and unrest, threatens the rights and privileges of the inhabitants of the Commonwealth, and undermines the foundations of a free democratic state."

Section 954(b) of the Human Relations Act defines the term "employer" to exclude fraternal corporations or associations "except such corporations or associations supported, in whole or in part, by governmental appropriations."

The fire company contends that the acceptance of the sum of $1,000 per year, or two percent of its budget, does not make it an arm of the borough and does not constitute governmental action and asserts that it performs an essential public service for the money which service would otherwise fall to the municipality.

It is clear that plaintiffs in this case must demonstrate that defendant is an arm of Parkside Borough and that, if it discriminates by reason of sex in its membership policies, it is doing so in the realm of official governmental action: Junior Chamber of Commerce of Rochester, Inc., Rochester, New York v. The United States Jaycees, Tulsa, Oklahoma, supra.

These cases are to be determined on the record in each. Therefore, the rule as stated in the United States Supreme Court in Kotch v. Board of River Port Pilot Com'rs, 330 U.S. 552, 556, 67 S.Ct. 910, 912, 91 L.Ed. 1093, 1095 (1947) is as follows:

"Because the virtue of the right to equal protection of the laws could lie only in the breadth of its

application, its constitutional assurance was reserved in terms whose imprecision was necessary if the right were to be enjoyed in the variety of individual-state relationships which the Amendment was designed to embrace. For the same reason, to fashion and apply a precise formula for recognition of state responsibility under the Equal Protection Clause is an 'impossible task' which 'This Court has never attempted.'" In Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 860, 6 L.Ed. 2d 45 (1961), the Supreme Court held that only by sifting facts and weighing circumstances can the nonobvious involvement of the state in private conduct be attributed its true significance.

The chancellor here finds no difficulty in determining that plaintiffs have established a sufficient nexus between defendant fire company and the borough to constitute state action and, therefore, being an instrumentality of Parkside Borough, it is forbidden by the Pennsylvania Human Relations Act and the 14th Amendment of the United States Constitution to deny membership to anyone based solely on sex. The record here is firmly persuasive that such discrimination does exist.

It would be naive and less than forthright on the part of a court in equity to fail to recognize that in the mores of these times, the effort is to make women first class citizens and first class citizens are entitled to participate in any activity where the receipt of government money constitutes a clear governmental involvement. If this fire company sincerely believed that it did not come within that category, it would not have amended its constitution in 1975 to strike out the clause "limiting membership to males only." If it were, as it here asserts,

a purely private organization, it could have maintained this distinction. In amending its constitution, it went part way to make itself eligible for public money but this goal is not achieved until the discriminatory voting procedure is also changed.

While we think this court might possibly stop at this point and enter an order requiring the voting system to be changed, because not only is there no safeguard against illegal discrimination, but the present system also lends itself to this abuse, the chancellor is loath to do this without at least suggesting what might be the acceptable voting method, and that is that there should be a set of qualifications for membership. If one meets these qualifications then secret ballots could be used in the membership election process but the reason for the rejection would have to be checked on the ballot. This would allow for rejection on general principles, including but not limited to incompatibility, trouble making tendencies, bad conduct, etc., and would still in a contest permit a judicial determination as to the soundness of the reasons following an evidentiary hearing. While this would be an untenable restriction on a totally private organization, the public should have a right to membership and the right to an evidentiary hearing if aggrieved.

## DECREE NISI

And now, May 8, 1978, pursuant to the findings of fact and conclusions of law adopted by this court it is hereby ordered and decreed as follows:

1. Defendant, Parkside Borough Fire Company, shall cease and desist from engaging in or complying with or supporting any rule, by-law, voting procedure, custom, usage or policy which permits or

requires arbitrary rejection of an applicant for membership by reason of sex.

2. Parkside Borough Fire Company shall promulgate appropriate, nondiscriminatory standards for membership in writing and adopt adequate and proper methods of voting on membership applications.

3. Parkside Borough Fire Company shall give adequate public notice when applications for membership may be submitted, such notice to indicate that applications may be submitted by all qualified persons without regard to sex.

4. The court shall retain jurisdiction pending further order of the court.

## ORDER

Unless exceptions hereto are filed within 20 days after notice of the filing of the adjudication herein, this decree nisi, upon praecipe, shall be entered by the prothonotary as a final decree and the court shall retain jurisdiction pending further action.