MOTOR MASTER PRODUCTS CORP.

v.

MOTOR MASTERS WAREHOUSE, INC.

Civ. A. No. 76–3962.

United States District Court,
E. D. Pennsylvania.

Aug. 15, 1978.

Stanley H. Cohen, Philadelphia, Pa., for plaintiff.

John H. Potts, Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

BECHTLE, District Judge.

Plaintiff Motor Master Products Corporation brought this action against defendant

Motor Masters Warehouse, Inc., alleging trademark infringement and unfair competition, in violation of the Lanham Trade-Mark Act of 1946, 15 U.S.C. § 1051 *et seq.* The case was tried before this Court on March 27–28, 1978. After careful consideration of the testimony and exhibits presented at trial, we make the following findings of fact and conclusions of law, pursuant to Fed.R.Civ.P. 52(a).

### FINDINGS OF FACT

1. Plaintiff Motor Master Products Corporation, a manufacturer and nationwide seller of automotive parts and components, is an Illinois corporation maintaining its principal place of business in Defiance, Ohio. Plaintiff also maintains a distribution center in Columbus, Ohio, for the assembly and cataloguing of its products [N.T. 1–15 to 1–16].

2. Defendant Motor Masters Warehouse, Inc., a warehouse distributor of brand-name automotive parts and components, is a Pennsylvania corporation maintaining its principal place of business in Philadelphia, Pennsylvania. Defendant also maintains a business office in Collingswood, New Jersey [N.T. 2–64 to 2–65, 2–101 to 2–102].

3. There is no business affiliation or connection between plaintiff and defendant [N.T. 1–84, 2–74].

4. Since its incorporation in May of 1934, plaintiff has conducted its business operations under its corporate name and trade name, Motor Master Products Corporation. Some of the automotive parts and components marketed by plaintiff are manufactured by plaintiff itself, while other automotive parts and components are manufactured for plaintiff by other corporations and are then packaged and distributed for sale by plaintiff [N.T. 1–15 to 1–16, 1–28, 2–29, 2–48 to 2–51].

5. Plaintiff's current product line includes automotive parts and components for use in automobiles, trucks, buses, boats, snowmobiles, agricultural equipment, construction and mining equipment, and for use in small engines such as lawnmowers, chainsaws and pumps. Parts and components marketed by plaintiff include universal joints, bearings, lubrication fittings, driveline and driveshaft parts, spark plugs and filters [N.T. 2–25 to 2–29, 1–40].

6. Plaintiff's products are sold by factory salesmen directly employed by plaintiff, manufacturers' agents and other sales organizations. The manufacturers' representatives selling plaintiff's products include 23 agencies which employ 55 agents throughout the United States. The Harry Hanser sales organization of New York represents plaintiff in Pennsylvania, and employs three agents to promote and sell plaintiff's products within a 100-mile radius of Philadelphia [N.T. 1–116 to 1–120, 1–147].

7. Each of plaintiff's salesmen or sales agents uses plaintiff's marketing catalogues and descriptive sales literature to promote and sell plaintiff's products to potential customers within the industry. Plaintiff spends $30,000 each year for its catalogues and sales literature, of which approximately $2,000 to $3,000 is spent in the Philadelphia area [N.T. 1–119 to 1–120, 2–45, Ex. P–2].

8. Plaintiff's customers are primarily wholesalers, commonly known within the industry as "jobbers." The automotive wholesaler or jobber purchases parts and components at a wholesale price from either a manufacturer or a warehouse distributor and stocks an inventory extensive enough to adequately support the needs of the repair industry in the wholesaler's locality. Plaintiff also markets its products directly to "end users," or ultimate purchasers, such as United Parcel Service or other large automotive fleets [N.T. 1–34 to 1–35, 1–133, 2–51 to 2–52, 2–70 to 2–71].

9. Plaintiff owns three federal registrations for the trademark "MOTOR MASTER" as applied to spark plugs, universal joints and parts thereof. The trademarks, registered in the United States Patent and Trademark Office, are as follows:

| Trademark | Registration No. | Registration Date |
|---|---|---|
| MOTOR MASTER | 339,620 | October 13, 1936 |
| MOTOR MASTER (and design) | 610,599 | August 15, 1955 |
| MOTOR MASTER (and design) | 636,788 | November 6, 1956 |

[N.T. 1–19 to 1–20, Ex. P–1A, P–1B, P–1C].

10. The design used by plaintiff in its two more recent trademark registrations is the combination of a checkered racing flag with bold, sweeping print for the words "MOTOR MASTER." This design gives the illusion of racing, speed and mobility [N.T. 1–73, 1–102 to 1–103, 2–55, Ex. P–1B, P–1C].

11. Since 1936, plaintiff has continuously used its "MOTOR MASTER" trademark, together with the registration symbol ® ordinarily used in conjunction with a trademark, to identify the products which it markets for sale.

12. All of the automotive parts and components sold by plaintiff are packaged in cartons, containers or wrappers which bear either the trademark "MOTOR MASTER" with the racing flag design, or the plaintiff's trade name and corporate address in Defiance, Ohio, or both. This identification of plaintiff's products is completed either by directly imprinting the trademark or tradename on the boxes or cartons, or by attaching adhesive labels which bear the trademark or trade name of plaintiff [N.T. 1–39 to 1–40, Ex. P–3A to P–3L, P–4A, P–4B].

13. The plaintiff operates on a fiscal year basis with the fiscal year ending March 31. Plaintiff's gross sales for the past six years, as derived from its annual financial reports, are as follows:

| Fiscal Year | Total Sales |
|---|---|
| 1978 | $2,500,000 (Est.) |
| 1977 | $2,267,306.56 |
| 1976 | $2,281,223.36 |
| 1975 | $2,075,015.62 |
| 1974 | $2,228,941.99 |
| 1973 | $2,105,450.02 |

[N.T. 1–31 to 1–32; Zeller Affidavit, dated June 7, 1977, p. 3, ¶ 7].

14. Plaintiff's sales in Pennsylvania and New Jersey, within a 100-mile radius of Philadelphia, for the first 11 months of its 1978 fiscal year are as follows:

| State | Sales within 75 miles of Phila. | Sales within 75–100 miles of Phila. |
|---|---|---|
| Pennsylvania | $19,980.38 | $30,707.59 |
| New Jersey | $29,225.79 | $71,594.68 |
| Total – | $49,206.17 | $102,302.27 |

[N.T. 1–143 to 1–146, 2–2 to 2–3, Ex. P–13 to P–16].

15. Since its incorporation in February of 1954, defendant has conducted its business operations under its corporate name and trade name, Motor Masters Warehouse, Inc. The defendant was initially formed as a warehouse distributor by Michael Shapiro ("Shapiro") for the purchase and sale of rebuilt automobile engines to the automobile wholesale market in the Philadelphia area. At some unspecified date, Shapiro sold the defendant company to Fred Beecher ("Beecher"), who continued and diversified its business operations for the purchase and sale of a wider line of automobile parts and components. After Beecher died in April of 1966, the trustees of his estate conducted the business operations of the defendant [2–64 to 2–65, 2–112 to 2–116].

16. In January of 1968, the trustees of Beecher's estate hired Charles N. Gaskill ("Gaskill") as general manager of the defendant company. Gaskill negotiated a formal credit extension agreement with Credit Representatives, Inc., a subsidiary of the Motor Equipment Manufacturers Association ("MEMA"), to alleviate the substantial financial problems which defendant was experiencing in 1968. Under the MEMA credit extension agreement, the creditors of the defendant agreed to await payment by the defendant until a future date while Credit Representatives, Inc., acted as "overseer" of the defendant's business operations. This credit extension agreement continued until 1975, when the defendant fully paid all of its creditors [N.T. 2–61 to 2–62, 2–115 to 2–116, 2–141 to 2–142].

17. Gaskill served as general manager of the defendant until September of 1971, when he purchased the defendant and became its President and one of its directors. Gaskill is currently Chairman of the Board of Directors of defendant [N.T. 2–62].

18. The defendant has never manufactured any automotive parts or components. The defendant, as a warehouse distributor, currently purchases automotive merchandise from approximately 52 manufacturers representing approximately 75 product lines [N.T. 2–67 to 2–69].

19. Many of the automotive parts and components marketed by defendant are the same types of products as those marketed by plaintiff, including universal joints, bearings, spark plugs and filters. However, the defendant does not market or distribute any product which has been manufactured or packaged by the plaintiff [N.T. 1–93, 2–67 to 2–69, 2–74 to 2–75].

20. After the defendant purchases automotive parts and components from a manufacturer, the defendant sells them to its customers without any alteration or repackaging of the manufacturer's original label or carton. Because the manufacturers of automotive parts and components extensively advertise their products throughout the automotive wholesaling and repair trades, the defendant may effectively sell such brand-name products without the expense of additional advertising [N.T. 2–74 to 2–75].

21. The defendant is not known by the general public, but rather is known within the automotive wholesaling market in which defendant conducts its business. Five years ago, the defendant had approximately 300 customers. However, because some of this business was unprofitable, it reduced the number of its customers to approximately 245 in a market within a 60- to 75-mile radius of Philadelphia. The geographical boundaries of defendant's marketing area are as follows: to the west, Lancaster, Pennsylvania; to the north, Allentown, Pennsylvania; to the east, Atlantic City—Ocean City—Cape May Courthouse, New Jersey; and, to the south, New Castle, Delaware [N.T. 2–75, 2–84, 2–138, 2–154 to 2–156].

22. The defendant's net sales for calendar year 1977 were $5,500,000. The defendant uses the "net sales" figure, rather than the "gross sales" figure, because the automotive parts industry experiences a very high percentage of returned sales items [N.T. 2–135].

23. Both plaintiff and defendant use in their respective business operations many forms and documents which bear their respective corporate and trade names and business addresses. Their respective forms and documents are used in the ordinary course of business and, consequently, are distributed to automotive wholesaler customers or other members of the industry [N.T. 1–42 to 1–43, 2–85 to 2–88, Ex. P–5A to P–5N, Ex. D–1 to D–16].

24. Both plaintiff and defendant have distributed a variety of promotional items to their respective customers. The promotional goods provided by plaintiff, such as mechanic's fender mats, outdoor thermometers, patches, pens, calipers and stickers, are imprinted with plaintiff's trade name or "MOTOR MASTER" trademark. The defendant has distributed to its automotive wholesaler customers an antique-car calendar which promotes Champion spark plugs and lists defendant's trade name and business address [N.T. 1–44 to 1–48, 2–145 to 2–146, 2–88, Ex. P–6A to P–6P, Ex. D–19].

25. Both plaintiff and defendant are members of national trade organizations. Plaintiff is a member of MEMA, an organization which limits its membership to manufacturers of automotive parts, and of the Manufacturers' Division of the Automobile Service Industry Association ("ASIA"), an organization which represents automotive manufacturers and distribution sales organizations. Defendant is a member of the Warehouse Distributor Division of ASIA, a member of the Automotive Warehouse Distributors Association ("AWDA"), a non-voting member of the Pennsylvania Automotive Wholesalers Association ("PAWA") and an associate member of the New Jersey Jobbers Association ("NJJA"). The defendant is a non-voting member of PAWA because it is not a wholesaler [N.T. 1–54, 2–18 to 2–19, 2–76].

26. The national trade organizations in the automotive industry sponsor trade shows to enable manufacturers to exhibit

their products. Plaintiff has appeared and exhibited its product line at trade shows sponsored by MEMA and/or ASIA for approximately 15 years. In addition to the display of its automotive parts and components available to the industry, plaintiff distributes at the trade shows sales flyers and descriptive literature which promote its products and services [N.T. 1–126 to 1–132].

27. The parties first discovered the existence of each other in April of 1976 at the Eastern Automotive Trade Show in Atlantic City, New Jersey. Plaintiff was exhibiting its products at the trade show and Gaskill, in his capacity as President of the Middle Atlantic Automotive Regional Shows, Inc., was assisting the sponsoring associations in the presentation and management of the show. During this trade show, Gaskill was approached by one of plaintiff's sales agents and was invited to visit plaintiff's exhibit booth. Gaskill never visited the plaintiff's exhibition during this show because of the responsibilities associated with the presentation and management of the show [N.T. 2–139 to 2–141].

28. After plaintiff learned of the existence of defendant in April of 1976, plaintiff so informed its general counsel, who wrote a letter to the defendant which asked the defendant to cease using the words "Motor Masters" in its trade name. Plaintiff received a negative response to its request from defendant [N.T. 1–49].

29. On November 23, 1976, counsel for the defendant mailed a letter (Ex. P–10) to "Motor Masters Products Corp." at an address in Kennett Square, Pennsylvania, requesting that such trade name not be used. Plaintiff does not maintain an office in Kennett Square, but does supply one of its customers, James Fleming, Jr. ("Fleming"), at the address to which the defendant's letter was mailed. Fleming, a franchise distributor of plaintiff's products, sells plaintiff's merchandise in a geographical area of Southeastern Pennsylvania which overlaps defendant's business territory.

30. In March of 1977 and in March of 1978, representatives of plaintiff and defendant appeared in Chicago, Illinois, at a trade show sponsored by ASIA and MEMA, the International Automotive Service Industries Show. At the 1978 show, Chilton's *Motor/Age Who's Who* (Ex. P–12) published a directory of those members in attendance at the show, listing plaintiff as one of the "Manufacturers Exhibiting" and defendant as both one of the "Warehouse Distributors Attending" and, erroneously, as one of the "ASIA Wholesaler Members Attending" [N.T. 1–128 to 1–130].

31. Defendant does not extensively advertise its services because it is more profitable for it to concentrate its selling efforts on its current customers. In those cases where defendant does advertise, it uses the complete corporate name "Motor Masters Warehouse, Inc.," together with its Philadelphia corporate address. The defendant also assists the manufacturers and wholesalers with whom it conducts business to promote their respective products and services [N.T. 2–80 to 2–82].

32. Since 1975, Gaskill and the defendant have been the subject of publicity in several trade publications having national distribution because of Gaskill's activity in various automotive trade associations and Gaskill's lectures concerning various automotive and warehousing topics. Some of the articles and publicity relating to Gaskill and the defendant have appeared in the same trade publications, although not the same issues, in which plaintiff has advertised. However, both plaintiff and defendant once advertised in the same issue of the 1977 Eastern Automotive Journal Directory and Buyers' Guide (Ex. D–27), wherein plaintiff was listed under the Manufacturers Section and defendant was listed under the Warehouse Distributor Section of the Guide [N.T. 2–90 to 2–100, 2–129, 2–161 to 2–163, Ex. D–28 to D–40].

## DISCUSSION

 A trademark is any word, name, symbol or device, or any combination thereof, adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others. 15 U.S.C. § 1127; *see Motor*

*Master Products Corp. v. Motor Masters Warehouse, Inc.*, 446 F.Supp. 165, 167–168 (E.D.Pa.1978). The intent of the Lanham Trade-Mark Act, 15 U.S.C. § 1051 *et seq.*, is, *inter alia*, to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of trademarks in commerce, and to protect the registrants of trademarks against unfair competition. 15 U.S.C. § 1127. In the determination of the issues of whether a person or corporation is liable to the registrant of a trademark for trademark infringement or unfair competition, we must first determine whether any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services, or in connection with such use, is likely to cause confusion, mistake or deception. 15 U.S.C. § 1114(1). Actual confusion is not required. *James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 572 F.2d 574, 578 n. 3 (7th Cir. 1978) (per curiam); *Telechron, Inc. v. Telicon Corp.*, 198 F.2d 903 (3d Cir. 1952); *Alfred Dunhill of London, Inc. v. Kasser Distillers Products Corp.*, 350 F.Supp. 1341, 1360 (E.D.Pa.1972), *aff'd mem.*, 480 F.2d 917 (3d Cir. 1973). Factors to be considered in the determination of the likelihood of confusion, mistake or deception in such cases are found in the *Restatement of Torts 2d*, § 729:

(a) the degree of resemblance between the designation and the other's trade name, trademark or certification mark in

(i) appearance;

(ii) pronunciation of the words involved;

(iii) translation of the words involved;

(iv) verbal translations of the pictures or designs involved;

(v) suggestiveness, connotation or meaning of the actor's designation and the trade name, trademark or certification mark involved;

(b) the intent of the actor in adopting and using the designation;

(c) the similarity of circumstances and conditions surrounding the purchase of the goods or services involved;

(d) the degree of care likely to be exercised by purchasers of the goods or services involved.

No single factor may be taken as controlling, and all pertinent factors must be considered to determine the likelihood of confusion, mistake or deception. *Alfred Dunhill of London, Inc. v. Kasser Distillers Products Corp.*, supra, 350 F.Supp. at 1363; *Kampgrounds of America, Inc. v. North Delaware A–OK Campground, Inc.*, 415 F.Supp. 1288, 1294 (D.Del.1976), *aff'd mem.*, 556 F.2d 566 (3d Cir. 1977).

In this case, we must determine whether plaintiff has met its burden of demonstrating that defendant's use in commerce of its corporate name and trade name, "Motor Masters Warehouse, Inc.," constitutes a reproduction, counterfeit, copy or colorable imitation of plaintiff's registered "MOTOR MASTER" trademarks which, when used in connection with defendant's business as a warehouse distributor of automotive parts and components, is likely to cause confusion, mistake or deception within the automotive aftermarket. The first factor to be considered in the determination of the likelihood of confusion, mistake or deception is the degree of resemblance between plaintiff's trademarks and defendant's trade name. In appearance, plaintiff's "MOTOR MASTER" trademarks are used to identify and distinguish plaintiff's products with bold, sweeping print and with a checkered racing flag to give the illusion of racing, speed and mobility. The defendant's trade name is consistently used with conservative print, its corporate address and without pictures or designs to convey any additional impression.[1] The appearance of plaintiff's distinctive trademarks, therefore, differs significantly from the appearance of defendant's trade name. However, it is obvious that the first two words of defendant's trade name constitute the plural of plain-

---

1. For representative examples of plaintiff's trademarks registered in 1955 and 1956 and of the printed use of defendant's trade name, *see* *Motor Master Products Corp. v. Motor Masters Warehouse, Inc., supra*, 446 F.Supp. at 168 n. 6, 169 n. 7.

tiff's "MOTOR MASTER" trademarks and, thus, the pronunciation of the words involved is almost identical. Finally, plaintiff's distinctive "MOTOR MASTER" trademarks, as accompanied with the sweeping print and racing flag design, are more suggestive of a business in the automotive industry than is the conservative appearance of defendant's trade name. Therefore, the degree of resemblance between plaintiff's trademarks and defendant's trade name is obviously high with respect to the practically identical pronunciation of the words "MOTOR MASTER" and "Motor Masters," but is not high with respect to the appearance and suggestiveness of plaintiff's trademarks and defendant's trade name.

The second factor to be considered in the determination of the likelihood of confusion, mistake or deception is the intent of the actor in the adoption and use of the trademark. The burden of producing evidence on the question of intent is upon the defendant. *Sears, Roebuck and Co. v. Johnson*, 219 F.2d 590, 593 (3d Cir. 1955). Further, an action for trademark infringement or unfair competition does not depend on proof of wrongful or fraudulent intent. *Chips 'N Twigs, Inc. v. Chip-Chip, Ltd.*, 414 F.Supp. 1003, 1015 (E.D.Pa.1976). In this case, the defendant did not produce any evidence concerning Shapiro's intent in 1954 in the selection of the corporate name "Motor Masters Warehouse, Inc.," or the use of that trade name in the operation of its business. Therefore, we find that the defendant has failed to satisfy its burden of proving that it lacked an intent to infringe upon plaintiff's trademarks.

The third factor to be considered concerns the circumstances and conditions surrounding the purchase of the goods or services involved. Although both plaintiff and defendant sell automotive parts and components there is a well-recognized distinction in the automotive aftermarket between manufacturers and warehouse distributors. Plaintiff manufactures automotive parts and components, or purchases such products from the Zeller Corporation or other manufacturers, and packages each product in boxes, cartons or wrappers which bear the "MOTOR MASTER" trademark before such products are sold throughout the country to warehouse distributors, wholesalers or ultimate purchasers. The defendant, a warehouse distributor, does no manufacturing and purchases automotive parts and components from manufacturers for resale exclusively to wholesalers in the industry in a restricted geographical area surrounding Philadelphia. None of the products manufactured or packaged by plaintiff are purchased by the defendant for resale to wholesalers. The plaintiff extensively advertises, promotes and catalogues its product lines with its distinctive "MOTOR MASTER" trademark to establish a secondary meaning in the minds of potential customers with respect to the quality and desirability of its products, thereby enhancing its national position in the automotive aftermarket and increasing its profits. To the contrary, the defendant utilizes a minimum of advertising and maintains a low level of visibility in the automotive aftermarket by concentrating its sales efforts on its current customers. The evidence shows that plaintiff's sales in Pennsylvania and New Jersey in an area within 75 miles of Philadelphia, for the first 11 months of the 1978 fiscal year, totalled $49,206.17, or less than 2% of plaintiff's total sales of approximately $2,500,000 throughout the country. By comparison, defendant's net sales during 1977 within roughly the same geographical area totalled approximately $5,500,000. For the reasons stated above, we find that the circumstances and conditions surrounding the purchase of the goods or services involved do not support a finding of a likelihood of confusion, mistake or deception.

The final factor to be considered in the determination of the likelihood of confusion, mistake or deception is the degree of care likely to be exercised by the purchasers of the goods or services involved. In this case, plaintiff argued that its manufacturing and supply business would be seriously damaged if its customers erroneously believed that plaintiff were engaged in busi-

ness as a competitor among warehouse distributors. In other words, plaintiff argued that some warehouse distributors may not purchase "MOTOR MASTER" products from the plaintiff because they are likely to conclude that the defendant's warehouse distribution business is affiliated or connected with plaintiff's business. The evidence demonstrated that the defendant has substantially reduced the number of its customers over the past five years in order to eliminate unprofitable arrangements with certain wholesalers and to improve its performance and service to its remaining customers. Consequently, the defendant, and Gaskill as its Chairman, are well known to the defendant's regular wholesaler customers, but are not well known by the public or ultimate purchasers of the products which defendant distributes for sale. In light of the professional and personal rapport between defendant and its regular customers, it is likely that these purchasers will continue to exercise the same degree of care in their wholesale purchase of brand name automotive parts and components which they have exercised to date. With respect to plaintiff's current or potential customers, plaintiff presented no evidence to demonstrate that such customers would purchase products from plaintiff in a different manner because of defendant's business operations as a warehouse distributor in the automotive aftermarket.

Upon consideration of the above factors, we find that defendant's use of the words "Motor Masters" in its corporate name and trade name does not constitute a reproduction, counterfeit, copy or colorable imitation of plaintiff's registered trademarks when used in connection with the defendant's business as a warehouse distributor of automotive parts and components, and that such use by the defendant is not likely to cause confusion, mistake or deception. Accordingly, we hold that the defendant is not liable to the plaintiff for the alleged infringement of its registered trademarks, or for any unfair competition.

Any factual references in this discussion shall be considered as our findings of fact in addition to those set forth under "Findings of Fact," and any conclusions of law in this discussion shall be deemed our conclusions of law in addition to those set forth in the following section.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter and the parties in this action under 15 U.S.C. § 1121 and 28 U.S.C. § 1338.

2. Plaintiff owns three valid, uncontestable federal registrations, currently in full force and effect, for the trademarks described in Finding of Fact No. 9. *See* 15 U.S.C. §§ 1051, 1057(b), 1065.

3. Plaintiff uses its trademarks in compliance with the notice and display requirements of the Lanham Trade-Mark Act by displaying with its trademarks the words "Registered in U. S. Patent and Trademark Office," or "Reg. U.S. Pat. & Tm. Off.," or the letter "R" enclosed within a circle, *i. e.*, ®. *See* 15 U.S.C. § 1111.

4. Plaintiff's trademarks are used to identify plaintiff's goods and to distinguish its products from those packaged or sold by other manufacturers. *See* 15 U.S.C. § 1127.

5. The federal registrations in the United States Patent and Trademark Office constitute conclusive evidence of plaintiff's exclusive right to use the trademarks described in Finding of Fact No. 9 in commerce for the goods specified therein. *See* 15 U.S.C. § 1115(b).

6. The defendant's use of its corporate name and trade name, "Motor Masters Warehouse, Inc.," in connection with the sale, offering for sale, distribution, or advertising of any of the defendant's goods or services, or in connection with such use, is not a reproduction, counterfeit, copy or colorable imitation of plaintiff's registered trademarks. *See* 15 U.S.C. §§ 1114(1), 1127.

7. The defendant's use of its corporate name and trade name, "Motor Masters Warehouse, Inc.," in connection with the sale, offering for sale, distribution, or advertising of any of the defendant's goods or services, or in connection with such use, is

not likely to cause confusion, mistake or deception. *See* 15 U.S.C. § 1114(1).

8. The defendant's use of its corporate name and trade name, "Motor Masters Warehouse, Inc.," in connection with the sale, offering for sale, distribution, or advertising of any of the defendant's goods or services, or in connection with such use, does not infringe plaintiff's registered trademarks, does not cause a loss in the value of any secondary meaning which the trademarks have acquired, and does not constitute an act of unfair competition.

9. In the absence of trademark infringement or unfair competition, the defendant is not liable to the plaintiff for the defendant's use of its corporate name and trade name and, therefore, plaintiff is not entitled to injunctive relief. *See* 15 U.S.C. § 1116.

10. The defendant is entitled to a judgment in its favor and against the plaintiff.