PERHAM et al. v. RICHMAN et al.

(Circuit Court, E. D. Pennsylvania. December 31, 1907.)

No. 41.

BENEFICIAL ASSOCIATIONS—NAMES—RIGHT TO ENJOIN USE OF SIMILAR NAME.
Certain divisions of complainant, the Order of Railroad Telegraphers, seceded therefrom and subsequently united in a new organization, adopting the name, the "Order of Railroad Telegraphers, Dispatchers, Agents, and Signalmen," of which respondents are members. Both orders are fraternal and benevolent, and not commercial, associations, and are composed of practically the same classes of railroad employés. Respondents adopted the name to distinguish their order from that of complainant, rather than to identify themselves with it, and it did not appear that any confusion or injury to complainant had resulted. *Held*, that the name adopted by respondents was properly expressive of the membership of their order, and that, in the absence of any showing of injury to complainant, or of probability of such injury, it was not entitled to a preliminary injunction to restrain respondents from using such name.

In Equity. Sur motion for preliminary injunction.

Robert J. Byron, for complainants.
J. S. Baird and M. M. Dolphin, for respondents.

HOLLAND, District Judge. This bill in equity is filed for the purpose of restraining the respondents from using the name they have adopted for their order. It was argued on bill and answer for a preliminary injunction, and in determining the rights of the parties the facts as stated in the answer must be assumed to be true, from which, together with the allegations in the bill not denied, we gather the following:

The complainants are members and the executive officers of the "Order of Railroad Telegraphers," which was organized and instituted at Cedar Rapids, in Iowa, on June 9, 1886. The Grand Division of this order is now located at St. Louis, Mo. "Any white person of good moral character * * * actually employed on a railroad as a telegrapher, train dispatcher, line repairer, leverman, or interlocker, tower or train director, agent located at railroad station, telephone operator, staffman, and of one year's experience as such," is eligible for membership. The purposes and objects of the order are protecting and developing the interests and elevating the social, moral, and intellectual condition of its members, by uniting them in a common and general body, bettering their working condition, and promoting their general welfare and happiness. The order also maintains a "Mutual Benefit Department" for aid and comfort of beneficiaries of deceased members. Its membership is very large, extending its influence throughout the United States, Canada, and Mexico.

Henry B. Perham, the president of the complainant organization, came to Philadelphia some time in the early part of 1907, and shortly afterwards quarreled with the officers of the respondent company, who are employés principally of the Pennsylvania Railroad. Shortly after, on May 18, 1907, the respondents organized the "Order of Railroad Telegraphers, Dispatchers, Agents, and Signalmen," and by its constitution made any white person of good moral character eligible to

membership who is 18 years of age and over, and is actually employed on a railroad as a telegrapher, dispatcher, agent, signalman, leverman, or lineman, and had one year's experience as such. (The word "agent" means agent telegraphers and agents who are not telegraphers.) It also permitted men with three years' experience to become members, although not at the time employed on a railroad. The purposes and objects of the respondent organization are to unite railroad employés mentioned, and to promote their social condition and elevate them morally and intellectually, and for the further purpose of maintaining a "Mutual Benefit Department" for the aid and comfort of beneficiaries of deceased members.

Prior to the adoption of the eligibility clause in the respondents' constitution, the complainants did not permit dispatchers or agents to join their order, and only those signalmen employed as levermen and interlockers were eligible. The complainants' eligibility law, shortly after the organization of the respondents' order, was changed to enable these workmen to become members.

The respondents deny there is such similarity in name as to cause confusion between the two orders, or that confusion has or will result. They further deny that the creation of local lodges will confuse the two orders, or deceive or mislead the public or persons who might desire to join either order, and that it has been customary for years to designate association of railroad men and other employés by the term "order," their sick and death funds by the term "mutual benefit department," and local lodges as "divisions." The name "order" and the term "mutual benefit department" now used by the complainants and respondents were taken and copied from the Order of Railroad Conductors and similar associations. The respondents also deny that their mutual benefit certificate or their form of application tends to deceive persons who may desire to become members of complainants' order.

The bill prays for a preliminary injunction to restrain respondents from using the name or circulating any of their printed matters or circulars containing the name.

Some time in the spring of 1906, by reason of some differences, the local divisions of the complainant order in and about Philadelphia reorganized independently under the Order of Railroad Telegraphers and continued to do business, each for itself, under that name until May 18, 1907, when all these local divisions were organized under the name of the "Railroad Telegraphers, Dispatchers, Agents, and Signalmen," adopted their constitution and by-laws, and fixed their principal office in the city of Philadelphia. Neither the complainants nor respondents form a business organization engaged in the manufacture or sale of any commodity whatever, but are both rather beneficiary organizations engaged in the high purpose of promoting the material, the moral, and intellectual welfare of its members. Their objects are personal and social, as distinguished from commercial purposes.

Both orders are fraternal and benevolent, and are organized apparantly for the same identical purposes. The respondent order had broadened the scope of its law regulating the eligibility of railroad employés for membership, and subsequently the complainants

adopted the same qualifications, and included railroad employés theretofore ineligible to membership in their order. So that, at the present time, both are engaged in the same laudable purpose of endeavoring to better the condition of certain railroad employés. The respondent order is composed of local divisions which were formerly connected with complainant order. When these local divisions first withdrew from the complainant order, they held the same name until May 18, 1907, when they changed it by adding to the old name, the "Order of Railroad Telegraphers," the additional words "Dispatchers, Agents, and Signalmen."

We here have a clear and convincing bit of evidence to show that the respondents adopted the name now used by it with no intention of deceiving railroad employés who are eligible and might desire to attach themselves to one or the other order, but rather for the purpose of giving notice of the separate existence of the respondent order. It is entirely patent that there was no intention to deceive. The names are entirely different, and no one, who is of sufficient intelligence to perform the duties of a railroad employé such as are mentioned in the eligibility clause of the respondent order or the complainant order, could be for a moment deceived as to which of the two orders he was about to join. The respondent order, being an offshoot of the parent order and composed of members engaged in similar occupations, for whose welfare both are working, could not appropriately avoid using the words "Order of Railroad Telegraphers" as part of their name. In fact, they would almost be bound to do so in order that they might properly describe the order.

The contention of the complainants that it is damaged by reason of the similarity of these names we do not think is established by the record. Of course, it is true the respondent order has not been in existence for any very great length of time, and it might be contended that there has not been sufficient opportunity to show the confusion which the complainants allege will result in the future. But even in the short time which has elapsed since the organization of the respondent order, if the anticipated confusion and misunderstanding is to occur which is so strongly urged by the complainants will take place in the future, there could have been proof of some instances occurring already. None has been brought to the attention of the court, and the alleged damage which the complainants will suffer as a result of the similarity of names is a matter of conjecture. We do not believe it will occur. The action of respondent in changing from the old name to that which it now has, indicated an intention of adopting a name for the new branch of the order so far dissimilar as to enable applicants for membership to easily distinguish the orders apart, and we are of the opinion that the respondents have succeeded in their purpose. There being no intention to deceive, and no such similarity of names of the two orders as could be said to mislead the ordinary citizen of average intelligence, the bill should be dismissed. Supreme Lodge K. of P. v. Improved Order K. of P., 113 Mich. 133, 71 N. W. 470, 38 L. R. A. 658; American Order of Scottish Clans v. Merrill, 151 Mass. 558, 24 N. E. 918, 8 L. R. A. 320; McVey v. Brendel, 144 Pa. 246, 22 Atl. 912, 13 L. R. A. 377, 27 Am. St. Rep. 625.

The motion for preliminary injunction is refused.