FREE AND ACCEPTED MASONS OF THE STATE OF TEXAS v. ANCIENT FREE AND ACCEPTED MASONS, COLORED, et al. (No. 7380.)

(Court of Civil Appeals of Texas. Dallas. July 3, 1915. Rehearing Denied Oct. 16, 1915.)

BENEFICIAL ASSOCIATIONS ⬅4 — INFRINGEMENT IN NAMES.

A colored order, known as the "Free and Accepted Masons," is not entitled to enjoin a rival order, subsequently started, which took the name of "Ancient Free and Accepted Masons, Colored," it appearing that there was no confusion of mail, or applications of membership, and that the last order distinctly held itself out as being different from the first, for, as the orders were charitable and humanitarian and were not engaged in business, there was no question of infringing a trade-name.

[Ed. Note.—For other cases, see Beneficial Associations, Dec. Dig. ⬅4.]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by the Free and Accepted Masons of the State of Texas against the Ancient Free and Accepted Masons, Colored, and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Mike E. Smith and O. W. Gillespie, both of Ft. Worth, for appellant. Thompson, Knight, Baker & Harris and George S. Wright, all of Dallas, for appellees.

TALBOT, J. The appellant, Free and Accepted Masons of the State of Texas, sued the appellees, Ancient Free and Accepted Masons, Colored, and others, to restrain the latter from using a name so similar to that of appellant, and especially from the use as a part of the appellees' name of the words "Free and Accepted Masons." Upon the presentation of appellant's petition a temporary injunction was granted, but upon final hearing judgment was rendered that appellant take nothing by reason of its suit and that the injunction be dissolved. From this decree of the court appellant appealed.

All of the parties to the suit are negroes. Since 1875 the appellant, as a Masonic organization under the name of "Free and Accepted Masons of the State of Texas," has conducted its affairs and acquired its membership and property. In 1885 appellant was duly incorporated by virtue of the laws of Texas under its said name. In 1908 or 1909 the appellees organized a Masonic order under the name "Ancient Free and Accepted Masons, Colored," and have since maintained their organization in Texas, using practically the same password, emblems, badges, etc., as those used by appellant and other Masonic organizations. The charter of appellee is dated February 6, 1909, and many of its members were formerly members of the appellant, and acquired a knowledge of the secret work and principles of Masonry while members thereof. Some of them were probably expelled from appellant's lodge, and some voluntarily abandoned appellant's organization and became members of the appellee's organization. The appellant has a membership of about 7,000 men and 4,000 women. It owns property of the estimated value of $300,000. This property is not used for profit. It is used for lodge purposes and as homes for orphan children of deceased members of the order and for indigent Masons of the order. The funds necessary for conducting and maintaining the work of the order seem to be raised by dues assessed and collected from its members. The appellee has a membership of about 740 men and about 320 women. It has no capital stock, but some property used for the purpose of conducting the work of the order, and the organization is not for the purpose of making money. Like appellant, its members are required to pay certain dues appropriated to charitable purposes and to care for the sick and wid-

ows and orphans of deceased members. In other words, the objects of both associations are "charitable and humanitarian."

No question of property is involved, and the evidence, as we view it, shows no pecuniary injury to appellant by the use of the name adopted by appellee, under which it maintains its organization, unless the teachings of the appellee's order, to the effect that it is entirely different from the appellant order and the only regularly constituted Masonic order, which has led some of the latter's members to withdraw and join appellee order, constitute such property or pecuniary damage. In 1908 some of the former members of the plaintiff order, in conjunction with various other colored men, organized five lodges of the "Ancient Free and Accepted Masons," and later, prior to March 16, 1909, these five lodges organized the Sunset Grand Lodge of Masons, and on March 16, 1909, the state of Texas granted to the Sunset Grand Lodge of Masons a charter, which showed that the Sunset Grand Lodge Free and Accepted Masons, Colored, of Texas, had incorporated, and that said charter gave to said Grand Lodge the rights to practice ancient free and accepted Masonry in the state of Texas. Since that time the Sunset Grand Lodge, Ancient Free and Accepted Masons, has been establishing subordinate lodges, practicing free and accepted Masonry, and engaged solely in a benevolent undertaking—the upbuilding of the negro race and the paying of benefits to the widows and orphans of deceased members of said order. The evidence further shows, or tends to show, that no person has ever made application to the defendant order, thinking or believing that he was making application to the plaintiff order; that no mail intended for defendant order has ever been received by plaintiff order; that there has never been any confusion in the minds of the public or in the minds of any person with reference to the identity of these two orders. On the contrary, the undisputed evidence shows that each of these orders has been contending that it was the only colored Masonic order, and that the other was spurious and clandestine.

Appellant presents but one assignment of error, which is as follows:

"The testimony is conclusive that the plaintiff, long prior to the organization of defendant organization, having theretofore long used the name, was duly and legally incorporated by virtue of the laws of the state of Texas under its said name, 'Free and Accepted Masons of the State of Texas,' and that long subsequent to plaintiff's incorporation, the defendant, without any valid authority pretended to organize a Masonic order and Supreme Lodge in the state of Texas, contrary to Masonic law, under the same, or sub-stantially similar name, to wit, under the name 'Ancient Free and Accepted Masons (Colored),' and by virtue thereof began operations in Texas. asserting and pretending that the last-named body was the only true and regularly constituted body of colored Masons in this state, using the same password, emblems, badges, and other insignia common to Masonry, and which had been adopted and used long prior by the plaintiff.

The court therefore erred in not holding that the defendants were infringing upon plaintiff's corporate name, and in not perpetuating the temporary injunction and permanently enjoining the defendants from operating and continuing the use of any part of plaintiff's corporate name."

The proposition asserted and urged under the assignment is:

"Where a corporation has appropriated and used a name for such a length of time as to become identified by the name, and has established a character and reputation under it, it is a fraud on the corporation if this name, or one similar thereto, is assumed by others under circumstances likely to lead the public to believe that the latter is the former body; and where injury will, or is calculated to, result to the former corporation on account thereof, a court of equity will, at the suit of the injured parties, restrain the further perpetration of the wrong."

It is said that as applied to trading concerns the decisive principle is that no man has a right to sell or advertise his own business or goods as those of another. Williams v. Farrand, 88 Mich. 478, 50 N. W. 446, 14 L. R. A. 161. Therefore one must not adopt a name so similar to that of another as to draw to himself business intended for that other. Chas. S. Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769; Supreme Lodge K. of P. v. Improved Order K. of P., 113 Mich, 133, 71 N. W. 470, 38 L. R. A. 658. In the last case cited it is said that this principle is correctly stated in the following language quoted in the opinion of the court:

"Where a corporation has appropriated and used a name for such length of time as to become identified by the name, and had established a character and reputation under it, it is a fraud upon the corporation and the public if this name be assumed by others under such circumstances as would lead the public to believe that they constitute the original corporation; and where injury will result to the corporation on account thereof, courts of equity will, at the suit of the injured parties, by injunction restrain the further perpetration of the wrong. It is the special injury to the party aggrieved and the imposition upon the public that constitute the wrong which the courts will redress. It is not necessary that the wrong should be intentionally committed. It is enough that the name should be used under such circumstances as would lead the public to believe that the latter organization was the former, and thereby cause injury to the former corporation." But "where the name was not chosen for the purpose of deception, and has not been used under circumstances intended or calculated to deceive, the similarity of names must be such as to deceive ordinary persons proceeding with ordinary care to justify the inference." Supreme Lodge K. of P. v. Improved Order K. of P., supra.

Mr. High, in his excellent work on Injunctions, after stating the general doctrine governing the jurisdiction of equity in restraint of the infringement of trade-marks, says:

"Courts of equity, in granting relief by injunction in this class of cases, proceed upon the principle that it is a fraud upon one who has established a trade and carried it on under a given name to permit another to assume that name, or the same name with a slight alteration, in such manner as to induce persons to deal with him in the belief that they are dealing with one who has given a reputation to that name," and

that, "since false representation is the principal ground for relief in equity by injunction against the piracy of a trade-mark, when no false representation or deceit is used, defendant only endeavoring, by his advertisement and by selling the article complained of, to show to the public that the article is that of his own manufacture, equity will not interfere, in the absence of any evidence of persons having been misled or deceived in the matter, even though defendant may also use, as designating his article, the name of the original manufacturer of the article sold by plaintiff," and that "when, upon the case presented, there is no evidence of fraud or deceitful representation, the court will decline to interfere." Sections 1085 and 1086.

Thus it appears, according to the rule announced by Mr. High, that even in suits involving the infringement of a trade-mark injunctive relief cannot successfully be invoked unless the evidence discloses that persons have been misled or deceived to their injury by false representations used by the party charged with the infringement. The only difference in the names of the organizations involved in the case of Supreme Lodge K. of P. v. Improved Order K. of P., cited above, consists in the words, "Improved Order," which is found in the title of the appellee therein. There was no evidence that the appellee chose the name "Improved Order Knights of Pythias," with the intention that their order should be supposed to be the order Knights of Pythias, nor that they had done anything since the order was founded to lead the public to believe that the orders were the same, and the court, after stating that the question was, "Is the name 'Improved Order Knights of Pythias' so nearly like the name 'Knights of Pythias' that ordinary persons, using ordinary care, would think them identical, would think them two names for the same order, or for branches of the same order, so that they would become members of the defendant's society when they really wanted to join complainant's society?" answered the same in the negative, and held that the name "Improved Order Knights of Pythias" could be lawfully taken as the name of the new order formed by members who had withdrawn from the old order of Knights of Pythias. There is as much dissimilarity in the names of the two organizations involved in the suit now before this court as in the names of the organizations before the court in the case cited, and just as much reason for holding that the appellant here is not entitled to the injunctive relief sought. There is no evidence warranting the conclusion that appellee order selected the name "Ancient Free and Accepted Masons, Colored," with the intention that its order should be understood and supposed to be the appellant order. On the contrary, the evidence tends strongly to show, if it does not conclusively do so, that since the organization of the appellee order it has uniformly sought to convince the public and those contemplating taking membership in the order that it

was materially different from the appellant order and the only colored Masonic order in the state or elsewhere. So upon the authority of Supreme Lodge K. of P. v. Improved Order K. of P., supra, it might be held in the instant case that the appellee is using the name "Ancient Free and Accepted Masons" under circumstances which do not lead the public to believe that it is the same or a branch order of the appellant, and hence could lawfully take the name adopted by it.

The cases cited by appellant very clearly show that, where a firm or corporation has built up a business under a firm or corporate name which has given that name a pecuniary value, another firm or corporation cannot adopt another name so similar as to mislead the public, and lead individuals to the belief that the firm or corporation using the new name is the same firm or corporation that was using that old name. This principle of law is well established, but it is not, in our opinion, applicable in the case at bar. The rule applicable to the facts of the present case is announced in the case of Grand Lodge v. Grimshaw, 34 App. D. C. 383. In that case the court, speaking through Mr. Chief Justice Shepard, says:

"The principle upon which courts of equity proceed in restraining the simulation of names is not that there is property acquired by one party in the name, but to prevent fraud and deception in the dealing with the party charged with the simulation of a name used by another in a similar business or manufacture. * * * Courts of equity do not exercise jurisdiction to inquire into and adjudicate the right of different associations for charitable or religious objects who hold themselves out to be the regular and only accredited representatives of some particular order or religious system. There must be some pecuniary injury resulting from the use of a name that may have been adopted by another, to warrant inquiry and justify relief. The injury must not be fanciful or sentimental, but real. It must be substantial, and such as a court of equity, upon principles of justice, will interpose to prevent"—citing Original La Tosca Social Club v. La Tosca Social Club, 23 App. D. C. 96–104.

The case of International Committee of Young Women's Christian Association v. Young Women's Christian Association of Chicago, 194 Ill. 194, 62 N. E. 551, 56 L. R. A. 888, is more in point and comes nearer sustaining the contention of appellant in this case, in our opinion, than any other authority cited by its able counsel; but, as pointed out by counsel for appellee:

"The Supreme Court in that case gave relief solely upon the ground that the names were so similar as to deceive and mislead the public into believing that the defendant was the plaintiff or a committee of plaintiff, and the court in its opinion said, in substance, that it clearly appeared from the entire record that the defendant adopted the name advisedly, and for the purpose of leading the general public to believe that it stood as a committee and representative of plaintiff association."

Our conclusion is that the facts did not warrant the interference of a court of equity in this case, and that the judgment of the

district court should be affirmed. It is therefore accordingly so ordered.

Affirmed.