**UNITED STATES JAYCEES and Pennsylvania Junior Chamber of Commerce,**

v.

**PHILADELPHIA JAYCEES.**

Civ. A. No. 78–3411.

United States District Court, E. D. Pennsylvania.

Dec. 4, 1979.

On Motion to Amend Jan. 3, 1980.

Cahn, D. J.

Robert B. Washburn, Woodcock, Washburn, Kurtz & Machiewicz, Philadelphia, Pa., for plaintiffs.

Bruce A. Cohen, Dechert, Price & Rhoads, Philadelphia, Pa., for defendant.

## MEMORANDUM

CAHN, District Judge.

### BACKGROUND

Plaintiffs, United States Jaycees (hereinafter National Jaycees) and Pennsylvania Junior Chamber of Commerce (hereinafter Pennsylvania Jaycees), have brought this action against defendant Philadelphia Jaycees. Plaintiffs allege that defendant's continued use of the trademark and trade name "Jaycees" is trademark infringement and false designation of origin under the Lanham Act (Federal Trademark Act of 1946), 15 U.S.C. §§ 1051–1127, and unfair competition under the common law of the Commonwealth of Pennsylvania. Jurisdiction is conferred upon this court by 28 U.S.C. § 1338, 15 U.S.C. § 1121, and the doctrine of pendant jurisdiction.

Plaintiffs have asked this court to enjoin the Philadelphia Jaycees from any use of the marks "Jaycees," "Jaycee," "J.C.," "J.C.'s," "Junior Chamber of Commerce," "Member of the United States Jaycees," "U.S. Jayceettes" and the various designs associated with and registered with these marks.

**690**

This controversy relates to the discriminatory policies of the National Jaycees. The National Jaycees, through its bylaws, precludes women from full membership as Jaycees. Women may neither vote nor hold office in any National Jaycee affiliate. The National Jaycees have consistently rejected attempts to admit women to full membership. In response, several affiliated chapters of the National Jaycees have interposed court challenges to the discriminatory policy of the National Jaycees. These cases have consistently held that there is no constitutional basis to prohibit the discrimination practices of the National Jaycees because no state action is present.[1] In response to these cases some affiliated chapters of the National Jaycees have abandoned or foregone individual policies of admitting women to full membership. Other affiliated chapters have chosen to admit women to full membership and accept disaffiliation. Defendant Philadelphia Jaycees is one such disaffiliated chapter.

Plaintiffs have brought this action as a test case. Plaintiffs' counsel at oral argument stated that success in this action may lead to threats or similar action against other affiliates or past affiliates who admit women to full membership and continue to use the "Jaycee" name to identify their organizations.

I make the following:

## FINDINGS OF FACT

1. Plaintiff United States Jaycees is a nonprofit corporation duly organized and existing under the laws of the State of Missouri with its principal office in Tulsa, Oklahoma.

2. The National Jaycees grew out of the Young Men's Progressive Civil Association (YMPCA), organized on October 13, 1915, in St. Louis, Missouri. In 1916, the YMPCA changed its name to "Junior Citizens," sometimes abbreviated "JC's." In 1918, the Junior Citizens became affiliated with the St. Louis Chamber of Commerce and became known as the Junior Chamber of Commerce. In 1920, the National Jaycees was formed after a caucus and convention among local clubs from several cities. The National Jaycees has continuously existed since then, first under the name United States Junior Chamber of Commerce and since July 19, 1965, as the United States Jaycees.

3. Plaintiff National Jaycees was incorporated as the United States Junior Chamber of Commerce in the State of Missouri on August 5, 1929, and officially changed its name to United States Jaycees on July 19, 1965.

4. At the present time National Jaycees has an affiliated state organization member in each of the 50 states and the District of Columbia and approximately 9,200 affiliated local chapters with approximately 386,000 members.

5. Plaintiff Pennsylvania Junior Chamber of Commerce is a nonprofit corporation duly organized on May 12, 1947, and existing under the laws of the Commonwealth of Pennsylvania and having an office in Lancaster, Pennsylvania.

6. Pennsylvania Jaycees was chartered by National Jaycees on May 1, 1939, and has been in continuous existence since May 1, 1939, to date.

7. Pennsylvania Jaycees recorded the name "Pennsylvania Jaycees" with the Secretary of the Commonwealth of Pennsylvania on May 3, 1967.

8. At the present time Pennsylvania Jaycees has approximately 15,000 members in more than 350 local chapters.

9. Defendant Philadelphia Jaycees is a nonprofit corporation duly organized in 1937 and existing under the laws of the Commonwealth of Pennsylvania and maintains an office in Philadelphia, Pennsylvania.

1. *New York Jaycees, Inc. v. United States Jaycees, Inc.*, 512 F.2d 856 (2d Cir. 1975); *Junior Chamber of Commerce of Kansas City v. Missouri State Junior Chamber of Commerce*, 508 F.2d 1031 (8th Cir. 1975); *Junior Chamber of Commerce of Rochester, Inc. v. United States Jaycees*, 495 F.2d 883 (10th Cir.), *cert. denied*, 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974).

10. Defendant Philadelphia Jaycees has been in continuous existence since 1937.

11. Since 1937 defendant Philadelphia Jaycees has been and continues to be a civic organization in the Philadelphia community and has carried out and continues to carry out many important community service projects, such as the local "Special Olympics program" for retarded children, Christmas shopping for orphans, and "half-way" houses.

12. Plaintiff National Jaycees is a collective organization made up of state and local organizations all of which are engaged in the services of "organizing and holding meetings, competitions and other special events for young men interested in the affairs and improvement of their communities, with the purpose of fostering interest in the community betterment programs at the local, state and national levels, as well as offering leadership experience to the members."

13. Plaintiff National Jaycees is the owner of certain registrations for service marks, collective marks, and trademarks in the United States Patent and Trademark Office which include the mark JAYCEES, alone and in combination with other words and designs, each of which is currently in full force and effect. (Exhibits 1–7 attached).

14. Affidavits have been filed and accepted pursuant to 15 U.S.C. §§ 1058 and 1065 with respect to registration numbers 746,757, 810,264, 813,205, and 813,475. Affidavits have been filed and accepted pursuant to 15 U.S.C. § 1058 with respect to registration numbers 964,460 and 964,461. Affidavits filed by National Jaycees pursuant to 15 U.S.C. § 1065 with respect to registration numbers 964,460 and 964,461 are presently being held in abeyance pending the disposition of the present litigation. With respect to registration number 1,060,286 affidavits under 15 U.S.C. §§ 1058 and 1065 are not yet due.

15. Each of the state and local organizations or chapters affiliated with plaintiff National Jaycees are permitted the use of the trademarks, service marks, and collective marks of plaintiff National Jaycees for the term of affiliation and membership.

16. Defendant Philadelphia Jaycees was an organization affiliated with the plaintiffs, a charter having been granted to it as a nationally recognized local chapter of plaintiff National Jaycees on or about July 17, 1937.

17. Defendant Philadelphia Jaycees was an officially recognized affiliate local organization member of National Jaycees during the period between about July 17, 1937, and June 26, 1973.

18. Defendant Philadelphia Jaycees' charter with plaintiff National Jaycees and affiliation with plaintiffs was revoked effective June 26, 1973, and a letter to that effect dated July 13, 1973, was sent to defendant Philadelphia Jaycees.

19. During the entire period that defendant Philadelphia Jaycees was an officially recognized affiliate local organization member of National Jaycees and up to the present time the bylaws of National Jaycees have required that the active members and officers of a local organization member to be eligible for affiliation be young men below the age of thirty-six. The present age requirement is between the ages of eighteen (previously twenty-one) and thirty-five inclusive.

20. Defendant Philadelphia Jaycees amended its bylaws on August 11, 1972, and admitted its first female member as an active member in September, 1972, in violation of the bylaws of plaintiff National Jaycees.

21. Defendant Philadelphia Jaycees' charter was revoked solely because defendant admitted women as active members with all rights, opportunities and privileges of membership.

22. Prior to revocation of the charter of defendant Philadelphia Jaycees and continuously thereafter to the present the bylaws of National Jaycees have included the following bylaw:

A Local Organization Member shall not change or amend its by-laws, constitution,

or articles of incorporation in such manner that will be inconsistent with any requirements for affiliation. Any Local Organization Member in violation of the foregoing may be subject to revocation of its charter as provided in By-Law 4–10.

23. Subsequent to the affiliation of the Philadelphia Jaycees, but prior to revocation of the charter of defendant Philadelphia Jaycees and continuously thereafter to the present the bylaws of National Jaycees have included the following bylaw:

Applying for affiliation with the Jaycees by a local organization member and/or maintaining affiliation shall constitute a waiver of all rights to the name Jaycees and/or Junior Chamber of Commerce in the event the local organization member at any time for any reason ceases to maintain a U.S. Jaycees charter. The Executive Vice President shall be authorized to and shall take necessary steps to create a binding contractual relationship between the Corporation and each Local Organization Member regarding such waiver.

24. The marks referred to in paragraph thirteen which include the mark "JAYCEES" are used by plaintiffs and members of their organizations in conjunction with the activities enumerated in paragraph twelve and for identifying their membership in plaintiff National Jaycees.

25. The marks referred to in paragraph thirteen have been used since adoption, and continue to be used by National Jaycees and Pennsylvania Jaycees.

26. The essential civic purpose of defendant Philadelphia Jaycees has not been changed since its disaffiliation with plaintiffs.

27. Since its disaffiliation from plaintiffs, defendant Philadelphia Jaycees has continued to render substantially the same type of civic services under the same designations as it had before its disaffiliation.

28. Defendant Philadelphia Jaycees is engaged in substantially the same type of civic services as are the other member organizations of plaintiffs National Jaycees and Pennsylvania Jaycees.

29. Defendant Philadelphia Jaycees after revocation of its charter, used and continues to use the designation "JAYCEES" in its activities.

30. Defendant Philadelphia Jaycees continues to use the designation "JAYCEES" on its letterhead, notices, and printed material.

31. Defendant Philadelphia Jaycees has solicited and continues to solicit funds using the designation "JAYCEES."

32. Since revocation of defendant Philadelphia Jaycees' charter efforts have been made by the parties to reconcile their differences but without success.

33. Defendant Philadelphia Jaycees has refused to delete the word "JAYCEES" from its corporate name and to discontinue use of such name in connection with its activities.

34. Defendant Philadelphia Jaycees has paid no dues to plaintiffs National Jaycees and/or Pennsylvania Jaycees since July of 1973.

35. The Executive Vice President of the National Jaycees never created a binding contractual relationship between the National Jaycees and the Philadelphia Jaycees regarding the Philadelphia Jaycees' right to continue using the mark "Jaycees" after disaffiliation as required by the National Jaycee's By-Laws.

36. The Philadelphia Jaycees has been recognized by that name in the Philadelphia area since approximately 1943. In 1954 it established The Jaycee Foundation, Inc., with which it eventually consolidated in 1974.

37. The revocation of the charter of the Philadelphia Jaycees in 1973 was accompanied by publicity and community interest.

38. The Philadelphia Jaycees in 1975 adopted a new identifying logo of "people to people" with a picture of clasping hands on all stationery, news release forms, and written public service announcements after the disaffiliation of the Philadelphia Jaycees from the National Jaycees.

39. Plaintiffs National Jaycees and Pennsylvania Jaycees have continued to correspond with the Philadelphia Jaycees and its officers in their official capacities as officers of the "Philadelphia Jaycees" since their disaffiliation on June 26, 1973.

40. After the disaffiliation of the Philadelphia Jaycees, the President of the National Jaycees, Rick Clayton, Jr., sought the assistance of the Philadelphia Jaycees in promoting a Jaycee sponsored television program in January, 1974.

41. Since the disaffiliation of Philadelphia Jaycees from plaintiffs on June 26, 1973, the National Jaycees has continued to permit the purchase of various official Jaycee products by the Philadelphia Jaycees, and has sold the Philadelphia Jaycees official member lapel pins, officer and director guides, Jaycee awards, president pins, past president pins, board of director pins, Jaycee coloring books, slide and audio presentations, and various other Jaycee products.

42. Several local organizations affiliated with the National Jaycees have admitted women to active membership with full rights, opportunities, and privileges for several years at the local level. These include chapters in Boston, Greater Hartford, Omaha, New York, Minneapolis, Kansas City, among others. The number of local organizations affiliated with the National Jaycees that have been admitting women to membership contrary to the bylaws of the National Jaycees has been estimated by National Jaycees officials as between seventy-five and eighty-five. Some local organizations have disaffiliated with the National over the issue of admitting women.

43. Plaintiff National Jaycees has been recognized by the name "Jaycees" in certain areas of the United States before the organization of defendant Philadelphia Jaycees in 1937.

44. National Jaycees has brought this action in an attempt to strengthen its ability to enforce its discriminatory membership policy which precludes women from voting membership or any position of office in affiliated organizations.

45. Other Jaycee affiliates have attempted to stop the National Jaycees from enforcing the discriminatory membership policy. Upon failure, some of these affiliates have accepted sanctions, and remained affiliated after reinstating a discriminatory membership policy.

46. The sole reason for the disaffiliation of the Philadelphia Jaycees, and the sole reason the differences between the Philadelphia Jaycees and National Jaycees cannot be reconciled is that the Philadelphia Jaycees refuse to discriminate against women.

This court will issue the following order:

1. The organization presently known as the Philadelphia Jaycees is PERMANENTLY ENJOINED from using the trademark "JAYCEE" or "JAYCEES" or any phonetic equivalents thereof, UNLESS such mark is preceded by the word "PHILADELPHIA" in print, type, or voice equal to that used for the trademark.

2. The organization presently known as the Philadelphia Jaycees is PERMANENTLY ENJOINED from using the trademark "JAYCEE," "JAYCEES," or any phonetic equivalent on any membership applications, literature soliciting members or donations, or advertising, UNLESS within such application, literature or advertising it is printed in type no smaller than the type used for the majority of the material in the application, literature, or advertising, and within close proximity to the name of the organization, that the organization is "NOT AFFILIATED WITH THE UNITED STATES JAYCEES OR THE PENNSYLVANIA JUNIOR CHAMBER OF COMMERCE."

3. The organization presently known as the Philadelphia Jaycees is PERMANENTLY ENJOINED from accepting orally solicited contributions UNLESS the contributor is informed that the Philadelphia Jaycees are not affiliated with the United States Jaycees or the Pennsylvania Junior Chamber of Commerce.

694

## DISCUSSION

■ The National Jaycees is the owner of the mark "Jaycees." Its federal registration of the mark creates a presumption of validity and exclusive right to ownership. 15 U.S.C. §§ 1057(b), 1115(a). Plaintiffs properly point out that their exclusive rights have become incontestable under 15 U.S.C. § 1115(b). Plaintiff also properly points out that under Pennsylvania law there would be the same result as under federal law. *Sears, Roebuck and Co. v. Johnson,* 219 F.2d 590 (3d Cir. 1955); *Campbell Soup Co. v. Armour and Co.,* 175 F.2d 795 (3d Cir. 1949). However, plaintiffs are in this court seeking injunctive relief which is available only "according to the principles of equity and upon such terms as the court may deem reasonable . . .." 15 U.S.C. § 1116 (1977).

Therefore, in deciding if I should issue an injunction or what an appropriate injunction might be in this case, I must consider the purposes and policies of the Lanham Act and general equitable considerations including public policy. There are also constitutional implications to this case that I must consider.

■ The general purpose of trademark law is to avoid public confusion and unfair competition. When a name becomes associated with certain products, groups, services, or goodwill in the public's mind, a competitor may not usurp that name, and by so doing unjustly acquire the goodwill associated with it.

■ Thus, a potential for public confusion is an essential element of a trademark infringement action. Plaintiffs seek an injunction barring any use of any of the marks in issue by the Philadelphia Jaycees. The only danger of confusion which the plaintiff has presented to this court is the danger that the public will think that the Philadelphia Jaycees are still an affiliate of the National Jaycees. *See* Plaintiffs' Reply to the Pretrial Memorandum of Defendant Philadelphia Jaycees at p. 4. It has become apparent during these proceedings that there is another significant danger of public confusion involved in this case. If I grant the injunction which the plaintiff requests, it would create confusion over the identity of the organization now conducting the activities of the Philadelphia Jaycees.

While the National Jaycees have a legal claim to the mark "Jaycees," the secondary meaning of that mark in the Philadelphia area is a product of the activities of the Philadelphia Jaycees. The public associates the name "Jaycees" with activities which have been sponsored and will continue to be sponsored by the Philadelphia Jaycees. When the public thinks of the "Jaycees," they associate it with the local "Special Olympics program," or Christmas shopping for orphans, or "half-way" houses in the Philadelphia area. The Philadelphia Jaycees will continue to operate these programs. The various activities of the Philadelphia Jaycees were not carried out under the supervision or impetus of the National Jaycees. The Philadelphia Jaycees rarely, if ever participated in programs in the Philadelphia area which were generated by the National.

The National Jaycees have suggested that they may promote the formation of a new affiliated local in Philadelphia. At this time there is none. Assuming one is formed, it will create a situation of potential public confusion. If I entered no injunction at all there is the potential for confusion over who is the affiliate of the National Jaycees in this area. The order I will issue eliminates virtually any possibility of that confusion. On the other hand, if I entered the injunction requested by the plaintiffs, a much greater danger of confusion would exist. If an individual would attempt to seek out the organization which has always organized the "Special Olympics" that individual might encounter difficulty. He might mistakenly believe or be advised that the new affiliated chapter was the organization which he sought. If two "Jaycee" organizations exist in the Philadelphia area individuals will be alerted to the fact that they must discern the one associated with the "Special Olympics."

■■ Among the factors weighed in deciding the likelihood of confusion is the degree of care which is likely to be exercised by those affected by defendant's activities. *See Chandon Champagne Corp. v. San Marino Wine Corp.*, 335 F.2d 531, 536 (2d Cir. 1964) ("sophistication of the buyers" must be considered); *Motor Master Products Corp. v. Motor Masters Warehouse, Inc.*, 463 F.Supp. 232, 238–39 (E.D. Pa.1978); *Quality Weaving Co. v. Regan*, 245 Pa.Super. 66, 369 A.2d 296 (1976). Some "mere possibility" that someone, somewhere, may be initially confused as to the Philadelphia Jaycees' status is not enough to justify injunctive relief. *Surgical Supply Serv., Inc. v. Adler*, 321 F.2d 536, 539 (3d Cir. 1963); *Kirkland v. National Broadcasting Co.*, 425 F.Supp. 1111, 1115 (E.D.Pa.1976); *KoolVent Metal Awning Corp. v. Price*, 368 Pa. 528, 84 A.2d 296 (1951). Given the order I will enter and the normally expected sophistication and level of inquiry which would be made by prospective members, corporate sponsors, or members of the public trying to contact the "Jaycees," there is little chance of any confusion. There would be substantial confusion if either I did not enter an order or I entered an order according to the plaintiff's request.

■ Equity does not require this court to issue an injunction where the threat of public confusion is not sufficiently proven. *See Perham v. Richman*, 158 F. 546 (C.C.E. D.Pa.1907) ("Order of Railroad Telegraphers, Dispatchers, Agents, and Signalmen" sufficiently distinguishable from "Order of Railroad Telegraphers"); *Most Worshipful Grand Lodge, A.F. & A.M. v. Most Worshipful Prince Hall Grand Lodge A.F. & A.M.*, 90 W.Va. 424, 111 S.E. 309 (1922) (persons promoting same objectives could use name of their former group descriptive of those purposes as long as it was accompanied by distinctive term); *Free & Accepted Masons v. Ancient Free & Accepted Masons, Colored*, 179 S.W. 265 (Tex.Civ.App.1915) (no injunction where the organizations distinguished themselves from each other); *Supreme Lodge Knights of Pythias v. Improved Order Knights of Pythias*, 113 Mich. 133, 71 N.W. 470 (1897) (seceders could use Knights of Pythias in name to describe the new group's origin, history, and purposes). Equitable discretion allows me to fashion the least intrusive order which creates the least confusion among the public. *See Wrist-Rocket Mfg. Co. v. Saunders Archery Co.*, 578 F.2d 727, 734 (8th Cir. 1978); *National Board of YWCA v. YWCA of Charleston*, 335 F.Supp. 615, 629 (D.S.C. 1971). This is the result I will achieve with the order I will enter.

■ Plaintiffs argue that the fact of affiliation itself represents a de facto merger of all of the affiliates rights into the national organization. Plaintiffs urge that upon disaffiliation with the national organization, defendant was required by an implied contract or some amorphous principle of trademark law to cede any rights to the mark "Jaycees." The cases which plaintiff uses to support its proposition involved express contracts to cede the name of the organization. *See Purcell v. Summers*, 145 F.2d 979, 982 (4th Cir. 1944); *National Board of YWCA v. YWCA of Charleston*, 335 F.Supp. 615, 626 (D.S.C.1971); *Order of Owls v. Owls Club of McKees Rocks*, 99 F.Supp. 555, 557 (W.D.Pa.1951). No evidence of any such contractual relationship was submitted in this case. To the contrary, it has been shown that the National Jaycees amended its bylaws in the 1970's to include a provision whereby the Executive Vice President of the United States Jaycees was instructed "to create a binding contractual relationship between the [United States Jaycees] and each Local Organization Member" regarding the relinquishing of all rights to the name "Jaycees" upon disaffiliation. No such contractual relationship was ever created between the National Jaycees and the Philadelphia Jaycees.

The Philadelphia Jaycees used the name "Jaycees" long before the National officially changed its name to "Jaycees," and long before the National registered such name as a trademark. During the entire time of affiliation the Philadelphia Jaycees remained a separate entity, duly organized

and existing under the laws of the Commonwealth of Pennsylvania. It was not organized as a franchise or subsidiary of the National. *Cf. Grand Lodge Improved v. Eureka Lodge*, 114 F.2d 46, 48 (4th Cir.), *cert. denied*, 311 U.S. 709, 61 S.Ct. 319, 85 L.Ed. 461 (1940). More importantly, the Philadelphia Jaycees have retained their independence and separate identity in a practical sense and in the public's mind. The Philadelphia Jaycees do not clear their activities through the National. The Philadelphia Jaycees are not required to do anything by the National except accommodate visiting Jaycee officers. I cannot imply from this relationship an absolute duty to cede all rights. The National has come to this court seeking to enforce a trademark, not a contract. The enforcement of the trademark by injunction remains equitable. The implications of disaffiliation are a factor to be considered, and do not require me to grant the precise injunction that plaintiffs request.

■ I believe the limited injunction I will enter fully serves the policy and purposes of the Lanham Act. To go any further would penalize the Philadelphia Jaycees and assist the National Jaycees in enforcing their discriminatory policy. As a chancellor, I could not act so flagrantly in a manner contrary to public policy.

Although I specifically requested that they do so, the National Jaycees neither presented nor argued any justification for the exclusion of women from full membership. Nor do the National Jaycees debate the proposition that unjustified discrimination on the basis of sex is contrary to the public policy of the United States and the Commonwealth of Pennsylvania. Public policy is always an equitable consideration in granting an injunction. This court will not aid and abet plaintiff in perpetuating unsubstantiated and unwarranted stereotypes concerning the place of women in business and civic affairs.

Plaintiffs place great reliance on the case of *United States Jaycees v. San Francisco Junior Chamber of Commerce*, 354 F.Supp. 61 (N.D.Cal.1972), *aff'd*, 513 F.2d 1226 (9th Cir. 1975), where the nonaffiliated San Francisco Junior Chamber of Commerce was enjoined from using trademarks owned by the National Jaycees. However, the way that court saw the facts and equities is not binding in the instant case. In the *San Francisco* case there was no finding that the defendant's charter was terminated solely or primarily because of a disagreement over the discriminatory policy of the National. 354 F.Supp. at 64. In the instant case I make such a finding. Thus, equitable, constitutional, and public policy concerns are present in the instant case that were absent in the *San Francisco* case. There are several other differences between the *San Francisco* case and the instant case. In the *San Francisco* case there were specific findings of fact concerning the secondary meaning of the various trademarks at issue, and the secondary meanings of the terms involved. *See* 513 F.2d at 1226 (Ely, Circuit Judge, concurring). In the *San Francisco* case there were stipulations of fact concerning public confusion relating to two competing Jaycee chapters in San Francisco. In the *San Francisco* case were no findings of fact relating to public confusion which could be caused by the injunctive relief requested by the plaintiff. Thus, the factual foundation of the opinion and order in the *San Francisco* case is significantly different from the instant case. I must fashion a remedy based on the facts as I find them in the instant case, not as they existed in the *San Francisco* case.

## CONSTITUTIONAL ISSUES

I feel that equitable considerations are adequate to justify the order I will issue. However, since the parties so fervently contested the Constitutional issues involved in this case, I will comment upon those issues.

■ Plaintiffs have asked this court to exercise its equitable discretion and grant its request for full injunctive relief. I hold that if I were to go beyond the injunction I will issue in this case it would unfairly penalize the defendant and aid the plaintiffs in continuing an unjustified discriminatory policy. Defendant argues imposition

of an unqualified injunction would constitute tantamount approval of the discriminatory policy of the plaintiffs and provide judicial aid in violation of the Equal Protection Clause of the United States Constitution. This court agrees.

The National Jaycees has defended its organization against many constitutional attacks on its discriminatory policy. Though the judges who have reviewed the Jaycee's discriminatory policy have commented disparagingly upon it, they have found that there was no basis for a constitutional objection because no "state action" was present.[2] In these cases the National Jaycees have consistently relied on the opinion of the Supreme Court in *Moose Lodge No. 107 v. Irvis*, 407 U.S. 162, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1971).[3] In that case the Court held that a private club could discriminate without violating the Constitution. The case is also often cited for its holding that the granting of a liquor license by a public authority was not sufficient to taint such discrimination with "state action."

However, in that same case the Court reminded us that *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), still represents binding law. The *Shelley* case held that court enforcement of racially restrictive covenants was the exercise of state action to enforce private discrimination, and thus unconstitutional. In the *Moose Lodge* case the Supreme Court held that the plaintiff was entitled to a decree enjoining the enforcement of a Liquor Control Board regulation requiring all licensed clubs to comply with their own bylaws and constitution. As the Court stated:

> Even though the Liquor Control Board regulation in question is neutral in its terms, the result of its application in a case where the constitution and bylaws of a club required racial discrimination would be to invoke the sanctions of the state to enforce a concededly discriminatory private rule.

407 U.S. at 179, 92 S.Ct. at 1974. I will not exercise my discretionary equitable power to aid the National Jaycees' enforcement of its discriminatory policy. *See Griffin v. Maryland*, 378 U.S. 130, 84 S.Ct. 1770, 12 L.Ed.2d 754 (1964); *Reitman v. Mulkey*, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). Not every attempt to enforce a trademark can be classified as an attempt to enforce a discriminatory policy simply because the plaintiff is a discriminatory organization. However, in this case I find that these plaintiffs seek to use this court to enforce unjustified discriminatory policies. The grant of an unqualified injunction in favor of plaintiffs would arm them with a cudgel to coerce affiliates to practice a policy of discrimination against women which some of these affiliates do not wish to follow. I believe that the plaintiffs have brought this action as a test case. *See* Transcript at 76. There is an implied but clear threat that they plan similar actions against other nondiscriminatory disaffiliated chapters should they succeed in this case.[4] The judiciary should not aid in the enforcement of a trademark[5] when it

---

2. *Junior Chamber of Commerce of Kansas City v. Missouri State Junior Chamber of Commerce*, 508 F.2d 1031, 1033, 1035 (8th Cir. 1975); *Junior Chamber of Commerce of Rochester, Inc. v. United States Jaycees, Inc.*, 495 F.2d 883, 884 n. 1 (10th Cir.), cert. denied, 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974); *New York Jaycees, Inc. v. United States Jaycees, Inc.*, 377 F.Supp. 481, 487 (S.D.N.Y.1974), rev'd, 512 F.2d 856 (2d Cir. 1975).

3. *See* note 1, *supra*.

4. *See* Finding of Fact number 42. In addition, I do not know how many chapters are presently coerced from ending discriminatory practices by threats such as this suit represents.

5. I note that the trademark itself was registered for the use of men. At times there may be valid reasons to usurp a monopoly over a mark for just one sex or ethnic group, as when that mark serves as an identifying symbol to inform the public, *e. g.* the name Young Mens Christian Association gives direct information. That is different than the instant case. This case may also be distinguished from a case of outright usurpation of a valid trademark. For example, if a men's club was faced with another club opening next door using the same name, with the intent to mislead the public, it would not *penalize* that new club to require it to use a distinct name. That is different from the instant case. In the instant case the Philadelphia Jaycees have a large investment of

would give the National Jaycees the power to say to their nondiscriminatory affiliates, in effect, either discriminate, or forfeit a large part of the goodwill you have built up *through your own efforts and cede it to a new discriminatory affiliate.*

The instant case is before this court in a very different posture than the *Moose Lodge* case or other cases which have attacked the National Jaycees discriminatory policy on constitutional grounds. In *Moose Lodge* and the other Jaycee cases, organizations or individuals sought to have a private organization's discriminatory policy declared unconstitutional. However, in the instant case, the discriminator has asked this court to exercise its equitable power to aid enforcement of a discriminatory policy. My colleague, the learned Judge Pollak, has stated the distinguishing principle:

> [T]he fourteenth amendment permits, each his personal prejudices . . . but access to state aid to induce others to conform is barred.

Pollak, *Racial Discrimination and Judicial Integrity*, 108 U.P.L.Rev. 1, 13 (1959).

The order which I have issued will not give aid or encouragement to the National Jaycees by penalizing the Philadelphia Jaycees. At oral argument the Philadelphia Jaycees expressed a strong desire to stress their disaffiliation from the National Jaycees. Therefore the order I will enter does not put this court in a position of penalizing an organization for not discriminating. However, my order will fulfill the salutary purpose of providing proper public identification of the Philadelphia Jaycees.

No order is issued in regard to any mark other than "Jaycee" because no evidence of infringement has been presented.

goodwill in a name and the National Jaycees want this court to strip that goodwill from the Philadelphia Jaycees so that it may potentially benefit a new discriminatory organization. The Jaycee affiliates are going through a slow

### ORDER

AND NOW, this 4 day of December, 1979, for the reasons set forth in the accompanying Memorandum, IT IS ORDERED that:

1. The organization presently known as the Philadelphia Jaycees is PERMANENTLY ENJOINED from using the trademark "JAYCEE" or "JAYCEES" or any phonetic equivalents thereof, UNLESS such mark is preceded by the word "PHILADELPHIA" in print, type, or voice equal to that used for the trademark.

2. The organization presently known as the Philadelphia Jaycees is PERMANENTLY ENJOINED from using the trademark "JAYCEE," "JAYCEES," or any phonetic equivalent on any membership applications, literature soliciting members or donations, or advertising, UNLESS within such application, literature or advertising it is printed in type no smaller than the type used for the majority of the material in the application, literature, or advertising, and within close proximity to the name of the organization, that the organization is "NOT AFFILIATED WITH THE UNITED STATES JAYCEES OR THE PENNSYLVANIA JUNIOR CHAMBER OF COMMERCE."

3. The organization presently known as the Philadelphia Jaycees is PERMANENTLY ENJOINED from accepting orally solicited contributions UNLESS the contributor is informed that the Philadelphia Jaycees are not affiliated with the United States Jaycees or the Pennsylvania Junior Chamber of Commerce.

4. Philadelphia Jaycees is granted a period of thirty days to arrange for appropriate internal procedures and to obtain supplies to comply with this Order.

evolutionary process of rejecting stereotypical images of women and removing barriers to women's participation in business and civic affairs. This court will not impede that process.

APPENDIX

# United States Patent Office

746,757
Registered Mar. 12, 1963

## PRINCIPAL REGISTER
### Service Mark

EXHIBIT
1

Ser. No. 143,582, filed May 1, 1962

## JAYCEES

The United States Junior Chamber of Commerce (Missouri incorporated association)
4 W. 21st St.
Tulsa, Okla.

For: ORGANIZING AND HOLDING MEETINGS, COMPETITIONS AND OTHER SPECIAL EVENTS FOR YOUNG MEN INTERESTED IN THE AFFAIRS AND IMPROVEMENT OF THEIR COMMUNITIES, WITH THE PURPOSE OF FOSTERING INTEREST IN COMMUNITY BETTERMENT PROGRAMS AT THE LOCAL, STATE AND NATIONAL LEVELS, AS WELL AS OFFERING LEADERSHIP EXPERIENCE TO THE MEMBERS, in CLASS 100.

First use Jan. 21, 1920; in commerce Jan. 21, 1920.
Owner of Reg. No. 553,642.

REGISTERED FOR A TERM OF 20 YEARS FROM Mar. 12, 1963

COMB. AFF. SEC 8 & 15

CERTIFIED TO BE A TRUE COPY OF THE REGISTRATION WHICH IS IN FULL FORCE AND EFFECT, WITH NOTATION OF ALL STATUTORY ACTIONS TAKEN THEREON, AS DISCLOSED BY THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE. SAID RECORDS SHOW TITLE TO BE IN: The United States Jaycees

Attest:

JAN 12 1979

Attesting Officer

Donald W. Banner
COMMISSIONER OF
PATENTS & TRADEMARKS

# United States Patent Office

810,264

Registered June 21, 1966

## PRINCIPAL REGISTER
### Service Mark

REGISTERED FOR A TERM OF 20 YEARS FROM June 21, 1966

Ser. No. 229,895, filed Oct. 11, 1965

**EXHIBIT 2**

COMB. AFF. SEC 8 & 15

The United States Jaycees (Missouri non-profit corporation)
4 W. 21st St.
Tulsa, Okla.

For: ORGANIZING AND HOLDING MEETINGS, COMPETITIONS, AND OTHER SPECIAL EVENTS FOR YOUNG MEN INTERESTED IN THE AFFAIRS AND IMPROVEMENT OF THEIR COMMUNITIES, WITH THE PURPOSE OF FOSTERING INTEREST IN COMMUNITY BETTERMENT PROGRAMS AT THE LOCAL, STATE AND NATIONAL LEVELS, AS WELL AS OFFERING LEADERSHIP EXPERIENCE TO THE MEMBERS, in CLASS 100.

First use July 1, 1965; in commerce July 1, 1965.

Without waiving any of its common law rights, applicant disclaims exclusive right to use the representation of the Map of the United States and the words "Member" and "Officially Recognized Affiliate Organization" apart from the mark as shown.

Owner of Reg. Nos. 553,642 and 746,757,

R. M. ROSS, *Examiner.*

CERTIFIED TO BE A TRUE COPY OF THE REGISTRATION WHICH IS IN FULL FORCE AND EFFECT, WITH NOTATION OF ALL STATUTORY ACTIONS TAKEN THEREON, AS DISCLOSED BY THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE. SAID RECORDS SHOW TITLE TO BE IN: Registrant

Attest:

JAN 1 2 1979

Attesting Officer

Donald W. Banner
COMMISSIONER OF
PATENTS & TRADEMARKS

# United States Patent Office
813,205
Registered Aug. 16, 1966

## PRINCIPAL REGISTER
### Collective Membership Mark

EXHIBIT
3

REGISTERED FOR A TERM OF 20 YEARS FROM   Aug. 16, 1966

Ser. No. 229,896, filed Oct. 11, 1965

COMB. AFF. SEC 8 & 15

The United States Jaycees (Missouri non-profit corporation)
4 W. 21st St.
Tulsa, Okla.

For: INDICATING MEMBERSHIP IN APPLICANT, in CLASS 200.
First use July 1, 1965; in commerce July 1, 1965.
Without waiving any of its common law rights, applicant disclaims exclusive right to use of the geographical representation of the United States, and the words "Member Officially Recognized Affiliate Organization."
Owner of Reg. Nos. 553,642, and 746,757.

R. M. ROSS, *Examiner.*

CERTIFIED TO BE A TRUE COPY OF THE REGISTRATION WHICH IS IN FULL FORCE AND EFFECT, WITH NOTATION OF ALL STATUTORY ACTIONS TAKEN THEREON, AS DISCLOSED BY THE RECORDS OF THE UNITED STATES PATEN AND TRADEMARK OFFICE.   SAID RECORDS SHOW TITLE TO BE IN:   Registrant

Attest:

JAN 1 2 1979

Attesting Officer

COMMISSIONER OF
PATENTS & TRADEMARKS

# United States Patent Office

964,460

Registered July 17, 1973

## PRINCIPAL REGISTER
### Collective Membership Mark

EXHIBIT
4

Ser No. 436,582, filed Sept. 25, 1972

## JAYCEES

The United States Jaycees (association)
Box 7
Tulsa, Okla. 74102

For: INDICATING MEMBERSHIP IN APPLICANT, in CLASS 200.
First use Jan. 21, 1920; in commerce Jan. 21, 1920.
Owner of Reg. Nos. 746,757, 813,475, and others.

R. M. ROSS, Examiner

REGISTERED FOR A TERM OF 20 YEARS FROM July 17, 1973

Certified to be a true copy of the registration
issued by the United States Patent & Trademark
Office, which registration is in full force
and effect. Record title is in Registrant

Attest

JAN 12 1979

COMMISSIONER OF
PATENTS & TRADEMARKS

# United States Patent Office

964,461
Registered July 17, 1973

### PRINCIPAL REGISTER
### Collective Membership Mark

> EXHIBIT
> 5

Ser. No. 436,583, filed Sept. 25, 1972

The United States Jaycees (association)
Box 7
Tulsa, Okla. 74102

For: INDICATING MEMBERSHIP IN APPLICANT,
in CLASS 200.
First use July 1970; in commerce July 1970.
Owner of Reg. Nos. 746,757, 813,475, and others.

R. M. ROSS, Examiner

REGISTERED FOR A TERM OF 20 YEARS FROM   July 17, 1973

Attest:

JAN 1 2 1979

Attesting Officer

Certified to be a true copy of the registration
issued by the United States Patent & Trademark
Office, which registration is in full force
and effect.   Record title is in   Registrant

COMMISSIONER OF
PATENTS & TRADEMARKS

704

# United States Patent Office

813,475

Registered Aug. 23, 1966

EXHIBIT
6

### PRINCIPAL REGISTER
### Trademark

REGISTERED FOR A TERM OF 20 YEARS FROM Aug. 23, 1966

Ser. No. 229,894, filed Oct. 11, 1965

COMB. AFF. SEC 8 & 15

The United States Jaycees (Missouri non-profit corporation)
4 W. 21st St.
Tulsa, Okla.

For: PRINTED MATTER AND PUBLICATIONS—NAMELY, BOOKS, MAGAZINES PUBLISHED PERIODICALLY, REPORTS, DIRECTORIES, INFORMATION CIRCULARS AND INSTRUCTION MANUALS ISSUED FROM TIME TO TIME—in CLASS 38.

First use July 1, 1965; in commerce July 1, 1965.

Without waiving any of its common law rights, applicant disclaims exclusive right to use of the geographical representation of the United States and the words "Member Officially Recognized Affiliate Organization."

Owner of Reg. Nos. 553,642 and 746,757.

R. M. ROSS, Examiner.

CERTIFIED TO BE A TRUE COPY OF THE REGISTRATION WHICH IS IN FULL FORCE AND EFFECT, WITH NOTATION OF ALL STATUTORY ACTIONS TAKEN THEREON, AS DISCLOSED BY THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE. SAID RECORDS SHOW TITLE TO BE IN: Registrant

Attest:

JAN 12 1979

Attesting Officer

COMMISSIONER OF
PATENTS & TRADEMARKS

Int. Cl.: 16

Prior U.S. Cl.: 37, 38

United States Patent Office

EXHIBIT
7

Reg. No. 1,060,286
Registered Mar. 1, 1977

# TRADEMARK
## Principal Register

The United States Jaycees (Missouri non-profit corporation)
4 W. 21st St.
Tulsa, Okla. 74102

For: MAGAZINES, REPORTS, DIRECTORIES, INFORMATION CIRCULARS, CERTIFICATES AND INSTRUCTION MANUALS ISSUED FROM TIME TO TIME ALL DEALING WITH COMMUNITY AFFAIRS, in CLASS 16 (U.S. CLS. 37 and 38).

First use June 15, 1974; in commerce June 15, 1974.

Without waiving any of its common law rights, applicant disclaims the outline map of the United States and the letters "U.S." apart from use with the mark as shown.

Owner of Reg. Nos. 746,757, 964,461, and others.

Ser. No. 61,347, filed Aug. 25, 1975.

B. A. CHAPMAN, Examiner

**REGISTERED FOR A TERM OF 20 YEARS FROM** Mar. 1, 1977

Attest:

JAN 1 2 1979

Attesting Officer

Certified to be a true copy of the registration Issued by the United States Patent & Trademark Office, which registration is in full force and effect. Record title is in Registrant

COMMISSIONER OF
PATENTS & TRADEMARKS

## ON MOTION TO AMEND

Plaintiffs' motion to amend the court's Findings of Fact is denied. It is not necessary to the case or the opinion to amend these facts.

In the opinion of December 5, 1979 [1] this court carefully traversed the ground it felt relevant to making an equitable decision. I looked at the policy and purposes of the Lanham Act and public policy, and I explored the meaning of the names at issue as they existed in the minds of the public. The formulation of the injunction in this case was not based on the technicalities of the dates of the registration of names in the state capitol, but of the names involved as their secondary meaning existed in the Philadelphia area and the nation. [2]

Plaintiffs' motion indicates that they may misunderstand the entire thrust of my opinion. Plaintiffs established a prima facie right to certain trademarks. However, sitting as a chancellor in equity I determined that the relief plaintiffs requested would cause confusion and harm to the public contrary to the policy and purposes of the Lanham Act. I also determined that plaintiffs were before me with discriminatory intent, purpose, and design, and that their discriminatory purpose was contrary to public policy. I also commented upon certain constitutional difficulties that would have been created had I granted plaintiffs the relief requested given the fact that I had previously found that plaintiffs were before me with discriminatory motive and design. I do not believe that the requested additional Findings of Fact have significant relevance to the basis of my decision.

---

1. Docketed December 7, 1979, and amended sua sponte December 10, 1979.

2. See the opinion at page 15. "More importantly, the Philadelphia Jaycees have retained their independence and separate identity in a practical sense and in the public's mind."